AMENDED OPINION*
*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2017 UT 42**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STICHTING MAYFLOWER MOUNTAIN FONDS and STICHTING MAYFLOWER
RECREATION FONDS,
*Appellants,*

*v.*

UNITED PARK CITY MINES COMPANY, REDUS PARK CITY LLC, EMPIRE
PASS MASTER OWNERS ASSOCIATION, INC., and RED CLOUD
HOMEOWNERS ASSOCIATION,
*Appellees.*

No. 20150047
Filed August 1, 2017

On Direct Appeal

Third District, Silver Summit
The Honorable Ryan M. Harris
No. 050500430

Attorneys:

Craig C. Coburn, Steven H. Bergman, Brad M. Liddell,
Salt Lake City, for appellants

Clark K. Taylor, Nicole M. Deforge, Salt Lake City, for appellees
United Park City Mines Company

Troy L. Booher, Clemens A. Landau, Salt Lake City, for appellees
REDUS Park City, LLC

Michael B. Miller, Douglas C. Shumway, Salt Lake City, for appellees
Empire Pass Master Owners Association and Red Cloud
Homeowners Association

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE DURHAM, JUSTICE HIMONAS,
and JUSTICE PEARCE joined.

*The court corrected factual inaccuracies in paragraphs 30 and 35.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 This case involves a dispute over a mining road built on Flagstaff Mountain (near Park City) over a century ago. The plaintiffs are Stichting Mayflower Mountain Fonds and Stichting Mayflower Recreation Fonds (collectively "Mayflower"). Defendants in the suit are owners of land traversed by the road.

¶2 Plaintiffs have asserted a right to use the road (1) as a public highway under the Mining Act of 1866 (R.S. 2477) and the 1880 Utah Highway Act, and (2) under a common law prescriptive easement claim. In a motion to amend their complaint, plaintiffs also sought to add an appurtenant easement claim.

¶3 The district court dismissed Mayflower's public roads and prescriptive easement claims on summary judgment. It also denied Mayflower's motion for leave to file a second amended complaint. We affirm.

¶4 Mayflower's public roads claim fails because Mayflower has not presented sufficient evidence of the road's "public use" for a sufficient period of time. The common law prescriptive easement claim also fails because the evidence and arguments presented by Mayflower on appeal were not preserved in the district court below. Finally, as to the denial of Mayflower's motion for leave to file a second amended complaint, we affirm in light of the substantial discretion afforded district courts under rule 15(a) of our Rules of Civil Procedure.

I

¶5 Mayflower is the successor to a chain of title to mining claims dating from 1871 on Flagstaff Mountain near Park City. According to Mayflower, historical records from the predecessor of the Bureau of Land Management show that prospectors and mine claimants built two miles of road from Park City to the mine in or around 1871. These claimants were granted a mining patent, and thus ownership to the mine and rights of access to their claims.

¶6 Notes kept by prospectors from nearby mines refer to a wagon road heading south from Park City to the mines. The historical record does not tell us who built the road. But it seems a fair inference that the road was built by the Flagstaff mine claimants;

the record identifies no one else who likely would have constructed it.[1]

¶7 Mayflower seeks to trace the "public use" of the road in question to 1871. It notes that prospectors began using the road to access Flagstaff Mountain at that time. And it claims that public use continued uninterrupted until 2006, when a new subdivision (Red Cloud) "obliterated" parts of the road. This use, in Mayflower's view, turned the road into a public highway, conferring rights on Mayflower (and the public generally) to use it.

¶8 Mayflower asserted such rights in this litigation. It filed its initial complaint in late 2005. That complaint formally appears to have raised only a common law prescriptive easement claim (though Mayflower insists that other claims were asserted implicitly).

¶9 The case languished for a time. After the parties filed their initial pleadings, there was no activity on the case for about a year and a half. This led the district court to order the parties to appear and explain why the case should not be dismissed. But the district court did not dismiss the case. Instead it noted that it anticipated a request for a hearing on a motion for preliminary injunction would be filed within sixty days. And it allowed the case to move forward on the basis of that expectation.

¶10 For the next two years the only activity in the case was a single deposition. In June 2009, the district court again ordered the parties "to show cause why this case should not be dismissed." *Order to Show Cause, June 25, 2009.* And again the case was not dismissed. Instead it was consolidated with a similar pending suit—a suit brought by Silver Cloud Properties seeking an easement over a roadway that crossed property owned by United Park City and that connected Silver Cloud's property with the highway.

¶11 A little over a year later Mayflower moved to amend its complaint, seeking to clarify "that plaintiff's rights include the right of use of public roads which extend to roads in which plaintiff's rights may be prescriptive." *Memorandum in Support of Motion to Amend, December 22, 2010* at 2. The district court granted Mayflower's motion. In the amended complaint Mayflower

---

[1] The parties disagree on the precise location of the mining road in the 1870s and 1880s. They also have different views on whether the road now at issue is the same as the one referred to in the historical record. But those disputes are immaterial in light of our disposition of the case.

"claim[ed] a right to a prescriptive easement over and across the Easement Property on the Easement Roads, and as a beneficiary of the public rights-of-way." *Amended Complaint, December 22, 2010* at 4.

¶12 The defendants filed a motion for partial judgment on the pleadings, asserting that Mayflower had "failed to state a claim that any property at issue is a dedicated public road." *Motion for Partial Judgment on the Pleadings, December 22, 2011* at 2. The district court denied the motion. But the court *sua sponte* ordered Mayflower to "make full and complete disclosures of their claims and evidence in this case." *Order Denying Motion for Partial Judgment, March 8, 2012* at 2. And the court warned that failure to do so "shall result in [Mayflower] being unable to use the individual, document, or evidence in further proceedings." *Id.* This was because the district court found Mayflower's claims to be "somewhat cryptic in nature," and thus "d[id] not put [defendants] on adequate notice regarding what [was] claimed." *Id.* The March 2012 district court order also required Mayflower to "provide the specific statute or case law they allege supports their claim to a public or private road," with failure to do so "result[ing] in [Mayflower] being unable to proceed with their claim." *Id.* at 3.

¶13 Mayflower's disclosures included at least a common-law prescriptive easement claim and a public road claim under a longstanding federal statute (the federal Mining Act of 1866, or more commonly, R.S. 2477).[2] The parties disagree on whether the claims

---

[2] Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, codified at 43 U.S.C. § 932, *repealed by* Federal Land Policy Management Act of 1976 (FLPMA), Pub. L. No. 94–579 § 706(a), 90 Stat. 2743. R.S. 2477 was enacted one year after the Civil War ended. It was designed to "promote[] the development of the unreserved public lands and their passage into private productive hands." *S. Utah Wilderness All. v. Bureau of Land Mgmt. (SUWA)*, 425 F.3d 735, 740 (10th Cir. 2005), *as amended on denial of reh'g* (Jan. 6, 2006). Thus, "R.S. 2477 rights of way were an integral part of the congressional pro-development lands policy." *Id.* at 740–41.

The statute was repealed in 1976, through enactment of the Federal Land Policy Management Act of 1976 (FLPMA). Pub. L. No. 94–579 § 706(a), 90 Stat. 2743. Yet FLPMA still preserved a party's ability to seek recognition of an R.S. 2477 road going forward—so long as it was based on activity taking place prior to FLPMA's enactment (on October 21, 1976). Pub. L. No. 94–579 § 701(a), 90 Stat. 2743, 2786 ("Nothing in this Act, or in any amendment made by this

(continued . . .)

extend further. Mayflower contends that it also included claims for an appurtenant easement and for private right of access.

¶14 Defendants filed a motion for summary judgment, asserting that (1) Mayflower cannot prove as a matter of law that the roads crossing defendants' land were established as public roads; and (2) Mayflower cannot prove the requirement of adverse use, which is necessary for a prescriptive easement claim. The district court ruled on that motion in an order issued in August 2012. In that order, the court granted the motion as to the prescriptive easement claim but denied it on the public road claim. (Nowhere in the district court's order, or in either party's summary judgment briefing, is there any discussion of any other claims.)

¶15 After the entry of this order, additional defendants were allowed to intervene, Mayflower's counsel withdrew and was replaced, and the district court re-opened discovery for all parties. During that discovery, in early 2014, a defense expert asserted (in a deposition) that Mayflower's two easement claims, including the appurtenant easement claim, were no longer part of the case due to the district court's August 2012 order. In response, Mayflower filed a

---

Act, shall be construed as terminating any valid . . . right-of-way . . . existing on the date of approval of this Act."); *see also SUWA*, 425 F.3d at 741 (describing FLPMA as having "the effect of 'freezing' R.S. 2477 rights as they were in 1976"). Thus, FLPMA preserved the viability of R.S. 2477 looking backward. It recognized that a public road could be established based on activity that took place while R.S. 2477 was still on the books. Pub. L. No. 94–579 § 509(a), 90 Stat. 2743, 2781 ("Nothing in this title shall have the effect of terminating any right-of-way or right-of-use heretofore issued, granted, or permitted."). The premise of this regime is the idea that R.S. 2477 rights are established without formal legal action (like a court filing and order). *See infra* ¶ 26 & n.3. Because an R.S. 2477 road could be established without such action, FLPMA allows a claimant to prove that such a road was established based on activity before the date of the R.S. 2477 repeal. Pub. L. No. 94–579 § 509(a), 90 Stat. 2743, 2781 (allowing a right-of-way to continue after FLPMA if it had been previously "granted"); *see also* Bret C. Birdsong, *Road Rage and R.S. 2477: Judicial and Administrative Responsibility for Resolving Road Claims on Public Lands*, 56 HASTINGS L.J. 523, 531 (2005) (noting that "[c]ourts and federal agencies have long considered R.S. 2477 to be a self-effectuating grant," and thus public roads "arise by operation of law at the time the factual conditions of the R.S. 2477 grant are satisfied").

motion for leave to file a second amended complaint. And in the memorandum in support of the motion Mayflower argued that the complaint would not put forth new theories or claims, but merely clarify those already proffered.

¶16 The district court denied Mayflower's motion on two independent grounds. First, it concluded that the amendment was not appropriate under the standard set forth in Utah Rule of Civil Procedure 15(a) because Mayflower had waited so long to add these claims and lacked a good explanation for the delay. Second, the court held that two new claims—appurtenant easement and private right of access—were barred by the court's earlier (March 2012) order because Mayflower had not identified these claims in its pretrial disclosures required by that order.

¶17 Both Mayflower and the defendants filed motions for summary judgment on the last remaining claim—the one relating to public roads. The district court denied Mayflower's motion and granted defendants' motion.

¶18 Mayflower filed this appeal. It challenges the dismissal of its prescriptive easement and public roads claims on summary judgment and the denial of its motion to file a second amended complaint.

¶19 Mayflower has also challenged the standing of one of the defendants—United Park City Mines Company—to defend the district court's judgment on this appeal. Mayflower notes that United Park City sold some of the property in question while this case was pending on appeal. It claims that this transaction divested Mayflower of any remaining interest in the roads that are the subject of this appeal. And because the roads allegedly traverse property now owned not by United Park City but by REDUS Park City LLC (REDUS), Mayflower asserts that United Park City no longer has standing to participate further in this appeal. It also has raised the question whether REDUS should be substituted for United Park City under Utah Rule of Appellate Procedure 38(c).

¶20 We entered an order directing the substitution of REDUS for United Park City in part—"to the extent REDUS now owns property previously held by [United Park City]." *Order, April 1, 2016.* In addition, we asked REDUS to clarify whether it intended to be represented by counsel for United Park City and to adopt the briefs submitted by United Park City. REDUS subsequently indicated an intent to step into United Park City's shoes "with respect to the properties" sold by United Park City to REDUS. *Motion, April 5,*

*2016*. And counsel made an appearance and argued for both appellees.

¶21 The above moots the standing issue raised by Mayflower. Because REDUS adopted United Park City's briefing in this case, and because the same counsel appeared and represented the interests of both appellees at oral argument, we see no need to sort through the record to determine whether or to what extent the property still owned by United Park City is implicated by this appeal. Both REDUS and United Park City are represented by the same counsel and advance the same arguments on this appeal. So we need not decide whether and to what extent one or the other of these appellees may have standing to defend the judgment before us on appeal because all of the relevant property is owned by one or the other of the two and both appellees advance the same arguments on appeal.

¶22 We accordingly proceed to the merits. In so doing we review the decision on summary judgment *de novo*. *See Bahr v. Imus*, 2011 UT 19, ¶ 16, 250 P.3d 56. As to the decision denying the motion to file a second amended complaint, our review is for an abuse of discretion. *See Fishbaugh v. Utah Power & Light,* 969 P.2d 403, 405 (Utah 1998).

II

¶23 Mayflower challenges the dismissal of its public roads and prescriptive easement claims on various grounds. It challenges the district court's dismissal of these claims on summary judgment on the basis of a range of alleged legal errors and genuine issues of material fact. It also claims error regarding the decision denying the motion for leave to amend.

¶24 We affirm. First, we conclude that the public roads claim fails as a matter of law because Mayflower does not and cannot come forward with evidence establishing that the road was in public use for the time period required by law. Second, we affirm the dismissal of the prescriptive easement claim on preservation grounds—concluding that the grounds for challenging summary judgment on appeal were not properly presented to the district court below. Third, we affirm the denial of the motion for leave to amend as falling within the district court's range of discretion.

A. R.S. 2477

¶25 Mayflower's public roads claim arises under the Mining Act of 1866, often referred to as R.S. 2477. That act opened up "mineral lands [in] the public domain" to be freely "explor[ed] and occup[ied]" by any U.S. citizen, or those who have "declared their intention to become citizens." R.S. 2477, § 1. To that end, it granted

the "right of way for construction of highways over public lands." *Id.* § 8.

¶26 R.S. 2477 is no longer on the books. It was repealed in 1976 by the Federal Land Policy Management Act (FLPMA). Pub. L. No. 94–579 § 706(a), 90 Stat. 2743. Yet R.S. 2477 still rules us from its grave. It does so, as noted above, in light of the nature of the establishment of an R.S. 2477 right. *See supra* ¶ 13 n.2. Such a right attaches automatically on the basis of activity sufficient to establish a public road. No formal adjudication, deed, application, or license is required.[3] Thus, an R.S. 2477 right may be recognized even today. If a plaintiff can show the existence of a public road based on activity prior to October 21, 1976 (the date of FLPMA's enactment), then a court may recognize the existence of a road under R.S. 2477.[4]

---

[3] *See S. Utah Wilderness All. v. Bureau of Land Mgmt. (SUWA)*, 425 F.3d 735, 741 (10th Cir. 2005) ("Unlike any other federal land statute of which we are aware, the establishment of R.S. 2477 rights of way required no administrative formalities: no entry, no application, no license, no patent, and no deed on the federal side; no formal act of public acceptance on the part of the states or localities in whom the right was vested."); *Sierra Club v. Hodel*, 848 F.2d 1068, 1083 (10th Cir. 1988) (describing R.S. 2477 as "an open-ended and self-executing grant" (overruled on other grounds by *Vill. Of Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992)); *Lindsay Land & Live Stock Co. v. Churnos*, 75 Utah 384, 285 P. 646, 648 (Utah 1929) (observing that "[R.S. 2477] was a standing offer of a free right of way over the public domain," and could be accepted "without formal action by public authorities" (citations omitted)).

[4] *See, e.g.*, U.S. DEP'T OF INTERIOR, REPORT TO CONGRESS ON R.S. 2477: THE HISTORY AND MANAGEMENT OF R.S. 2477 RIGHTS-OF-WAY CLAIMS ON FEDERAL AND OTHER LANDS 29 (1993) (indicating that in 1993, nearly 1,500 R.S. 2477 claims had been recognized by courts or the Department, with another 5,600 claims remaining to be adjudicated, and an unknown number of potential claims that had yet to be asserted); Matthew L. Squires, Note, *Federal Regulation of R.S. 2477 Rights-of-Way*, 63 N.Y.U. ANN. SURV. AM. L. 547, 557 (2008) ("R.S. 2477 rights-of-way that perfected prior to FLPMA's enactment are 'grandfathered in' and continue to be valid public easements, and the countless roads and trails crossing federal land that existed prior to 1976 are fair game to be claimed by states and counties as R.S. 2477 rights-of-way.").

¶27 The terms and conditions for establishing a public highway are largely "'borrow[ed]' from long-established principles of state law." *SUWA*, 425 F.3d at 768. Thus, R.S. 2477 does not prescribe a specific time period in which a road must be subject to public use in order to become a public highway as a matter of federal law. Instead, the requisite "public use" time period is dictated by state law, such that the time necessary to establish an R.S. 2477 public highway may differ from state to state, and may vary within a state as state law is amended from time to time.[5]

¶28 The latter point is front and center here. The period of public use necessary to establish a public highway has been amended over time under Utah law. Before 1880, the matter was governed by the law of prescriptive easement. In this era, in other words, the only way to establish that a road had been subject to public use for long enough that it became a public highway was to establish the elements of a common law prescriptive easement. *See Harkness v. Woodmansee*, 26 P. 291, 292 (Utah 1891) ("The right to a public road . . . by prescription arises from the uninterrupted adverse enjoyment of it under a claim of right known to the owner for the requisite length of time.").[6] And such a claim required proof that a particular road was adversely and continuously used by the public for *twenty years*. *Id.*

¶29 The legal landscape in Utah was altered by the 1880 Highway Act. That statute, enacted in February 1880, provided that "all roads used as [highways] *for a period of five years* are highways."

[5] "In some states, the required period was the same as that for easements by prescription, in some states it was some other specified period, often five to ten years, and in some states it was simply a period long enough to indicate intention to accept." *SUWA*, 425 F.3d at 771 (footnotes omitted).

[6] *See also SUWA*, 425 F.3d at 769–70 (observing that "[u]nder the common law, the establishment of a public right of way required two steps: the landowner's objectively manifested intent to dedicate property to the public use as a right of way, and acceptance by the public"; and thus concluding that the only "difficult question" in determining whether a public road had been created "was whether any particular disputed route had been 'accepted' by the public before the land had been transferred to private ownership or otherwise reserved" since "R.S. 2477 was uniformly interpreted by the courts as an express dedication of the right of way by the landowner, the United States Congress").

1880 UTAH LAWS 51, Chapt. 29 (emphasis added). So for uses from February 1880 going forward, a claimant could establish the existence of a public highway on the basis of public use for five years. But the common law governed for uses before the enactment of the Highway Act, and public use for twenty years was the rule under the common law.

¶30 These time frames are crucial in this case. It is undisputed that a portion of the land traversed by the subject road became private property on October 13, 1881. That is the date the so-called Home Station mining claim was located. Thus, no use beyond that date could be a public use that would count toward the establishment of a public highway. The full period of public use would have to have been completed before October 13, 1881.

¶31 We find no genuine issue of material fact on this question. Specifically, we conclude that Mayflower has not identified evidence sufficient to show that *either* the twenty-year common law period or the five-year statutory period was fulfilled prior to October 13, 1881.

¶32 The earliest date of any public use identified by Mayflower is 1871—when the road in question allegedly was first built.[7] But at that time the applicable time frame was that set forth in the common law—twenty years. And clearly the twenty-year clock never expired. As of October 1881 about half of the relevant time was still left on the clock.

¶33 Mayflower insists that the shorter statutory time frame should apply. And because it views the record as establishing more than five years of public use before October 1881, Mayflower claims that the road had become a public highway before the attempt at privatizing it in connection with the Home Station mining claim.

¶34 We assume, at least for the sake of argument, that the 1880 Highway Act applies in the circumstances of this case. But we nonetheless reject Mayflower's claim. We do so because we interpret the 1880 statute as applying only prospectively—or in other words as not altering the applicable twenty-year time frame in place prior to the statutory enactment. Nothing on the face of the statute, after all, suggests retroactive application. And the longstanding

---

[7] There is a dispute between the parties on the year of the road's construction. We give the benefit of the doubt on this point to Mayflower because we conclude that its claim fails as a matter of law even assuming that the road was completed as early as 1871.

presumption is that statutes apply only prospectively. *See Warne v. Warne,* 2012 UT 13, ¶ 25, 275 P.3d 238 (noting that "we generally presume that a statute applies only prospectively"); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (observing that "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic").

¶35 Mayflower's claim fails on that basis. Before February 1880 the only relevant time frame was a twenty-year common law clock. That clock had not run out as of the date of enactment of the 1880 Highway Act. By 1880, in fact, the record of public use had extended for only about nine years. A second potential time frame was added with the enactment of the statute. This allowed Mayflower to satisfy either the common law or the statutory time period—whichever it could fulfill first. But because the statute had no retroactive application, the five-year clock that it imposed did not begin to run until February 1880 (when the statute was signed into law). And clearly the five-year clock did not expire before October 1881. When the Home Station mining claim was located, the statutory clock on public use had been running for less than two years. And the common-law clock had been running for merely a decade—half of the required time.

¶36 We affirm summary judgment for defendants on that basis. We conclude that Mayflower failed to establish a genuine issue of material fact on the public use necessary to show that the road in question had become a public road under R.S. 2477.[8] And we accordingly hold that the public roads claim fails as a matter of law.

---

[8] In basing our decision on this ground, we stop short of addressing several grounds embraced by the district court and briefed by the parties on appeal. Those grounds include the requirement of proof of public use by "clear and convincing" evidence, the determination that "prospectors" were not relevant members of the "public" whose use counted toward establishing a public highway, and the conclusion that a single purpose road could not qualify as a public use. These are important questions, but we need not, and thus do not, resolve them here. Thus, we conclude that Mayflower's claim fails as a matter of law even if it prevails on each of the grounds we do not reach—on the standard of proof, on whether prospectors count as relevant members of the public, and on whether a single purpose qualifies as public use.

### B. Prescriptive Easement

¶37 Mayflower's second claim arises under the common law. Under this count, Mayflower asserts that it has rights to use the road in question under the common law of prescriptive easement.

¶38 Mayflower unquestionably asserted a prescriptive easement claim in its pleadings below. Yet defendants defend the dismissal of this claim on the ground that the evidence and authority advanced by Mayflower on appeal was never presented to the district court in the proceedings below.

¶39 We agree and affirm on that basis. The principal question presented on this claim is whether Mayflower had permission to access the road in question. Defendants sought dismissal of the prescriptive easement claim on the ground that evidence of Mayflower's permission to use the road undermined the element of *adverse use* necessary to establish a prescriptive easement.

¶40 In response, Mayflower generally opposed summary judgment on the prescriptive easement claim. And it cited some authority of relevance to the element of *adverse use*. *See Heber City Corp. v. Simpson*, 942 P.2d 307, 311 (Utah 1997); *Morris v. Blunt*, 161 P. 1127, 1131 (Utah 1916). But there was no legal analysis in Mayflower's opposition to the motion for summary judgment—no application of the governing law to the facts of the case. Mayflower cited no evidence and made no attempt to argue that the evidence presented by defendants established adverse use or undermined the inference of consent.

¶41 On appeal, by contrast, Mayflower presented extensive evidence and legal argument challenging defendants' showing as to Mayflower's permission. Yet virtually none of the evidence or authority presented on appeal was advanced by Mayflower in the district court. That is significant. Under rule 56 of the Utah Rules of Civil Procedure, Mayflower was required to identify evidence in the district court record that created a dispute of material fact.[9] Yet it

---

[9] The 2013 version of Utah Rule of Civil Procedure 56(e) states

"[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the pleadings, but the response . . . must set forth specific facts showing that there is a genuine issue for trial. Summary judgment, if

(continued . . .)

failed to do so. Instead of identifying facts that created a genuine dispute of fact, Mayflower proffered only abstract statements of its position. It simply asserted the following:

> [Defendants] assert[] that Mayflower's use of the roads in issue was not "adverse" because, long after a public or private road would have been established, [defendants] made no substantial effort to block such use.
>
> The gist of "adversity" is that the use was maintained under claim of right. Failure to block the use is not consent. Certainly, where the use is previously established by the public, or by prior private owners, failure to block the use is irrelevant.

*Stichting Mayflower's Response to UPCM's Motion for Summary Judgment*, May 23, 2012 at 4.[10]

¶42 Mayflower concedes that it failed to argue much of the evidence presented on appeal in its briefing in the district court. But it seeks to excuse that failure by noting that much of the evidence was attached to its memorandum in opposition to defendants' motion for summary judgment. Yet that is insufficient. To comply with the requirements of rule 56, Mayflower had to do more than *attach evidence* and hope the district judge would appreciate its significance.[11] Mayflower had the burden of "set[ting] forth specific

---

appropriate, shall be entered against a party failing to file such a response."

[10] The block-quoted material represents the entirety of Mayflower's analysis of the prescriptive easement claim in the district court.

[11] *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001) (adopting "the majority view that the district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein"); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671–72 & n.1 (10th Cir. 1998) ("[W]here the burden to present such specific facts by reference to exhibits and the existing record was not adequately met below, we will not reverse a district court for failing to uncover them itself.").

facts *showing* that there is a genuine issue for trial." UTAH R. CIV. P. 56(e) (2013) (emphasis added). And to do that Mayflower had to do more than just *attach* evidence; it had to analyze the evidence to *show* that it created a genuine issue for trial.

¶43 The district court had no duty to look beyond Mayflower's bald statements to identify supporting evidence buried somewhere in the record.[12] And the district court cannot be faulted for not considering analysis that was not properly presented to it under rule 56. It would be unfair to the appellees (and to the district court) to overturn a decision on summary judgment on the basis of analysis presented for the first time on appeal. We refuse to do so. And we affirm on the ground that the district court properly granted summary judgment based on the record and arguments presented by the parties below.

### C. Motion for Leave to Amend

¶44 Mayflower's final claim arises under the law of appurtenant easement.[13] This claim was advanced by Mayflower in a proposed second amended complaint. Mayflower sought leave to file this second amended complaint in a motion under rule 15(a). The district court denied the motion (1) under the standard set forth in rule 15(a), and (2) as foreclosed by Mayflower's failure to advance the claim in response to its March 2012 order. We affirm.

---

[12] *See L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 567 (7th Cir. 1993) ("[A] district court need not scour the record to determine whether there exists a genuine issue of fact to preclude summary judgment. Instead, the court can rely upon the non-moving party to show such a dispute if one exists."); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) ("[T]here is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" (citation omitted)); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

[13] Mayflower also asserts that its "single claim for relief . . . contained allegations that would support relief under . . . a private right of access theory." *Appellants Brief* at 11. But nowhere else in its opening or reply briefs is this "private right of access" claim mentioned. So we treat this silence as a waiver of Mayflower's right to challenge the dismissal of that claim on appeal.

## 1. Rule 15(a)

¶45 "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served." UTAH R. CIV. P. 15(a) (2013). "Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Id.*

¶46 This latter clause is applicable here. Mayflower's amendment required leave of court. And leave is to be "freely given when justice so requires." *Id.* That standard gives little guidance. More than anything, it underscores the breadth of discretion given to district judges on the matter of amendment.

¶47 That is not to say the judge's discretion is unbridled. Our cases have identified some considerations that judges should take into account in deciding whether "justice" requires leave to amend. In particular, we have identified grounds that "weigh against" a decision to allow an amendment. *See Daniels v. Gamma W. Brachytherapy, LLC*, 2009 UT 66, ¶ 58, 221 P.3d 256 (citation omitted). Those grounds include a determination that the requested amendment is "untimely, unjustified, [or] prejudicial." *Id.*; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (applying the parallel federal rule; explaining that leave should be "freely given" "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.").

¶48 Rule 15(a) yields substantial discretion to the district court. The district judge is to decide whether the nonmoving party has identified a ground or factor sufficient to defeat the presumption in favor of amendment. *See Daniels*, 2009 UT 66, ¶ 58. There is no rigid test. Even a single consideration or factor may be enough to justify denial of a motion for leave to amend. *Id.*

¶49 Our review under this discretionary standard is deferential. The question presented is not whether we would have granted leave to amend. It is whether we find an abuse of discretion in the district judge's decision to deny the motion. *See Fishbaugh v. Utah Power & Light*, 969 P.2d 403, 405 (Utah 1998).

¶50 We affirm under this standard. In denying the motion for leave to amend, the district court noted that the case had been pending for nine years when Mayflower sought to add additional

claims—claims it could have but failed to include in its earlier pleadings. It also cited concerns regarding additional delay if the case were extended further at this late date. These are classic grounds for denying a motion under rule 15(a).[14] And we see no reason to question the court's reliance on these grounds.

¶51 Mayflower challenges the district court's decision on the ground that its appurtenant easement claim was implicitly referenced in its first amended complaint. And because the elements of this claim overlap substantially with the elements of its existing claims, Mayflower insists that the amendment would not have required additional discovery or caused appreciable delay in the proceedings.

¶52 These arguments misapprehend the nature of our appellate review under rule 15(a). This rule leaves a lot of discretion in the hands of the district judge. The judge is charged with deciding whether the movant had a good reason for not asserting the new claims at an earlier stage of the proceedings, and whether the risk of delay from an amendment is substantial. And the judge's findings are entitled to deference on appeal. We are in no position to disturb them. Under the applicable standard of review, we owe deference to the district court's determination that Mayflower's delay and the impact on the timely resolution of the case were sufficient to defeat the presumption in favor of amendment.[15] We affirm on that basis.

---

[14] *See, e.g., Prince v. Bear River Mut. Ins. Co.,* 2002 UT 68, ¶ 49, 56 P.3d 524 (concluding "that a trial court does not abuse its discretion when it denies a motion to amend a pleading that was filed after an extensive delay without an adequate justification, after some issues have been resolved, and when that pleading would add new parties and claims, especially when the moving party" was aware of this and could have added parties or claims earlier); *R & R Energies v. Mother Earth Indus., Inc.,* 936 P.2d 1068, 1080 (Utah 1997) (determining that "[t]he trial court was within its powers to deny [petitioner's] motion to add new parties and claims more than four years after the case commenced"; noting that "[t]his is especially true given the fact that [petitioner's] complaint demonstrates that it knew that all of the parties it sought to add were involved with each other from the outset of the case and therefore that they could have been joined in a timely manner").

[15] *See Hudgens v. Prosper, Inc.,* 2010 UT 68, ¶ 18, 243 P.3d 1275 ("Because a district court is 'best positioned to evaluate the motion to

(continued . . .)

¶53 The district judge earlier allowed Mayflower to amend its complaint five years into the litigation. He also twice declined to dismiss the case despite two periods of inactivity of almost two years each. Given his involvement in and experience with the case, the district judge was in a better position than we are to know whether Mayflower had a good reason for not asserting these new claims earlier, and to assess the impact of an amendment on further delay in the resolution of a case that had already languished for many years.

### 2. The March 2012 Order

¶54 A district judge is charged with managing the court's docket. That responsibility encompasses the task of assuring the "just, speedy, and inexpensive determination of every action." UTAH R. CIV. P. 1. The district judge's March 2012 order was aimed at furthering that important goal. The order was a response to defendants' motion for partial judgment on the pleadings under Mayflower's first amended complaint. Defendants' motion construed the first amended complaint as asserting only a prescriptive easement claim, while acknowledging that Mayflower also purported to be asserting a public road claim. The district court denied the motion. But it also found Mayflower's amended complaint to be "somewhat cryptic in nature," such that it did "not put [defendants] on adequate notice regarding what is claimed." With this in mind, the court ordered Mayflower to "make full and complete disclosures of their claims and evidence" in a written submission on or before March 14, 2012. *Order Denying Motion for Partial Summary Judgment on the Pleadings and Requiring Clarifying Disclosures Under Rules 16 and 26, March 8, 2012* at 2–3. Thus, "[f]or each roadway claimed," the Mayflower plaintiffs were required to "provide the specific statute or case law they allege supports their claim to a public or private road." *Id.* at 3. Third District Judge Kelly also warned that "[f]ailure to provide such information by the date set forth herein shall result in Mayflower being unable to proceed with their claim." *Id.*

¶55 This was an understandable directive given the prior twists, turns, and delays in this litigation. Mayflower had been given other opportunities to clarify its claims at earlier stages. And the case had

---

amend in the context of the scope and duration of the lawsuit,' we will reverse denial of leave to amend only if the district court abused its discretion." (citation omitted)); *Dupler v. Yates*, 351 P.2d 624, 637 (Utah 1960) (noting that the decision whether to allow a party to amend its complaint to add new theories or claims "rests in the sound discretion of the trial court").

been languishing for quite some time, including months and even years without any activity at all. So the judge's March 2012 order was appropriate and even commendable. And when Mayflower failed to comply with it (by expressly indicating that it was asserting an appurtenant easement in a written submission filed by February 10, 2014), the district court acted well within its discretion in refusing to allow the addition of these claims.

¶56 Mayflower asserts that it did include an appurtenant easement claim in its pleadings and response to the March 2012 order. It also challenges the propriety of the March 2012 order, contending that the specificity and detail it required are nowhere found in the rules of civil procedure.

¶57 We see the matter differently. We affirm the district court's determination that Mayflower did not adequately identify an appurtenant easement claim before the deadline specified by the court. And we likewise uphold the district court's prerogative to issue an order like this one. Perhaps Mayflower is right that the March 2012 order set forth pleading requirements that went beyond the generally applicable terms of our rules of civil procedure. But the order is appropriate and even laudable under the circumstances. Our "[t]rial courts have broad discretion in managing the cases assigned to their courts." *Maxfield v. Herbert*, 2012 UT 44, ¶ 21 n.6, 284 P.3d 647 (citation omitted). And we can hardly criticize the court for requiring specificity and finality in a case that had been pending for many years without a clear outline of the claims presented for adjudication.

¶58 We accordingly affirm the denial of the motion for leave to amend under both rule 15(a) and under the terms of the court's March 2012 order.

---