**2022 UT App 113**

# THE UTAH COURT OF APPEALS

JARED SORENSEN,
Appellant,
*v.*
DAVID SPARKS, ASHLEY BENNETT SPARKS, B&W AUTO LLC,
DIESELSELLERZ.COM LLC, 4X4 ANYTHING LLC, ET AL.,[1]
Appellees.

Opinion
No. 20200648-CA
Filed October 6, 2022

Second District Court, Farmington Department
The Honorable Glen R. Dawson
The Honorable David J. Williams
No. 140700467

Jonathan W. Heaton, Attorney for Appellant

R. Lane Jenson and Cole S. Cannon,
Attorneys for Appellees

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN D. TENNEY concurred.

ORME, Judge:

¶1 Jared Sorensen brought suit seeking, among other things, declaratory judgment on his ownership interests in various limited liability companies (LLCs) that were formed as part of a joint venture he entered into with David Sparks (the Sorensen/Sparks Venture). Following years of litigation, the district court granted judgment on the pleadings to the

---

1. The parties on appeal are not limited to those listed but also include other parties whose names appear on the notice of appeal or who have otherwise entered appearances in this court.

defendants and subsequently denied Sorensen's motion for leave to amend his complaint a second time. We affirm.

BACKGROUND[2]

¶2    In 2012, Sparks owned B&W Auto LLC (B&W), a car dealership and auto shop that specialized in diesel trucks, while Sorensen owned a marketing and app development company. Seeing an opportunity to combine forces, the two began discussing going into business together. In mid-October of that year, Sorensen and Sparks met to discuss the Sorensen/Sparks Venture in greater detail. "They discussed how they could use Sorensen's marketing platform to sell diesel trucks and other products, specifically how they could implement Sorensen's marketing platform on a Facebook page for diesel trucks that Sparks had created the day before[.]" They also discussed the need to build a website to which they would channel the social media traffic, which eventually manifested as DieselSellerz.com.

¶3    That November, Sorensen left his company to work at the Sorensen/Sparks Venture full-time, which he agreed to do on the condition that he be a partner in the venture. But because of Sparks's reluctance, they "did not follow the legal formalities of forming a partnership." Instead, they "agreed to work together on the Sorensen/Sparks Venture as partners, but without an operating agreement or any other written contract between them." Despite this understanding, when registering DieselSellerz.com LLC—one of multiple LLC entities formed in

---

2. "On appeal from the grant of a motion for judgment on the pleadings, we take the factual allegations of the nonmoving party as true, considering such facts and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party." *Pierucci v. U.S. Bank, NA*, 2015 UT App 80, ¶ 8, 347 P.3d 837 (quotation simplified).

furtherance of the Sorensen/Sparks Venture—Sparks listed himself and his wife, Ashley Bennett Sparks, as its sole owners.

¶4    In March 2013, shortly after construction of an office for the Sorensen/Sparks Venture was completed in Salt Lake City, Sorensen and Sparks "discussed their respective ownership interests in the venture." Although they did not define their exact ownership interests at that time, they confirmed that the two of them were "the equity partners in all of the Sorensen/Sparks Venture's dealings."

¶5    Sorensen later developed Diesel Power Gear (DPG), a clothing company catering to diesel truck enthusiasts. He also designed the first ten shirts for DPG and created the website dieselpowergear.com on which to sell the clothing. Sorensen and Sparks agreed that for each clothing item purchased, the purchaser would be entered into a raffle to win a diesel truck, which Sparks would assemble under the auspices of B&W. Sparks then organized Diesel Power Gear LLC but did so in his name only, omitting Sorensen from the filing. In its first month, DPG generated $60,000 in sales revenue.

¶6    By May, Sorensen had done most of the work on DieselSellerz.com and on DPG, while Sparks's involvement in the Sorensen/Sparks Venture "was severely limited." "Sorensen created, managed, administered and otherwise solely ran those companies," while "Sparks spent his time at B&W and relied on Sorensen to manage the Sorensen/Sparks Venture companies." Sparks nevertheless took draws from the companies and commingled assets of the Sorensen/Sparks Venture companies with those of B&W.

¶7    In June, Sorensen again tried to solidify their respective ownership interests in the Sorensen/Sparks Venture, but Sparks avoided any discussion on the subject and did not come to the office for two months. Sparks told Sorensen that he "should trust

him" and that he was not coming into the office because he was busy "taking care of things and trying to get the shop stable."

¶8    In October, Sparks sent Sorensen an email detailing that Sorensen's ownership share in the Sorensen/Sparks Venture was limited to twenty-five percent. That December, the Sorensen/Sparks Venture hired an attorney to, among other things, draft an operating agreement. In January 2014, Sorensen and Sparks asked the attorney to "set up multiple companies and ensure that the structure was done correctly by including Sorensen as an owner." The attorney created several additional LLC entities as part of the Sorensen/Sparks Venture but, according to Sorensen's complaint, "only listed a registered agent" for those companies.

¶9    On two occasions between mid-January and early February 2014, Sparks held Sorensen out as an owner of the Sorensen/Sparks Venture during meetings with potential investors and business partners. In a February 2014 meeting with the attorney, Sparks indicated that he owned fifty percent, Sorensen owned twenty-five percent, and a third individual owned the remaining twenty-five percent of the Sorensen/Sparks Venture companies. After the attorney questioned that arrangement, Sparks emphasized that he was not concerned with "the money split" and "agreed that Sorensen had built DPG from the ground up" and that all the other companies were being "funded and built off the income of DPG." Sparks therefore stated "that giving Sorensen a majority ownership of DPG was appropriate and giving him equal profit and loss was acceptable" but that he "wanted to retain final say about where the Company direction was headed regarding . . . DieselSellerz.com."

¶10    In mid-February, Sorensen, Sparks, the attorney, and the third individual met to discuss the structure of the LLC entities going forward. The parties eventually decided that Sorensen would have a forty percent interest in DPG and a twenty-five

percent interest in DieselSellerz.com. However, an operating agreement to that effect was never executed. By late February, the relationship between Sorensen and Sparks had soured. Sparks accused Sorensen of incurring substantial debt for the Sorensen/Sparks Venture companies and removed Sorensen's access to the companies' business bank accounts. When Sorensen later approached Sparks with an operating agreement reflecting what had been agreed to during the mid-February meeting, Sparks refused to sign it, stating that "things have changed." Sparks then took additional steps to alienate Sorensen from the companies.

¶11 In May 2014, Sorensen brought suit against Sparks, Ashley Bennett Sparks, B&W, and the various LLC entities formed under the Sorensen/Sparks Venture (collectively, Appellees). Sorensen filed an amended complaint later that year, which alleged several causes of action and sought declaratory judgment establishing Sorensen's ownership interests in the Sorensen/Sparks Venture companies. Appellees filed several counterclaims against Sorensen, and the case proceeded to discovery.

¶12 Four years later, in 2018, the district court issued an order resolving various motions in limine. Because neither side "included a computation of damages prior to the end of discovery," the order barred either side from "presenting any evidence of damages at trial" and dismissed "any cause of action seeking money damages," with the exception of one of Appellees' counterclaims. Notably, the order did not dismiss Sorensen's claims seeking declaratory judgment.

¶13 Appellees filed a Motion to Refuse to Enter or Render a Declaratory Judgment, in which they urged the district court to exercise its discretion to decline to enter declaratory judgment on the ground that it "would not terminate the uncertainty or controversy giving rise to the proceeding." *See* Utah Code Ann. § 78B-6-404 (LexisNexis 2012). In support of their argument,

Appellees listed eighteen "legal and factual questions that would be raised by a declaratory judgment giving [Sorensen] an ownership interest in the" Sorensen/Sparks Venture companies. And in their reply memorandum, Appellees argued that Sorensen "has not plead[ed] a membership theory that would permit a trier of fact to find he is a member of" the Sorensen/Sparks Venture companies. Specifically, under the law in effect at the relevant time (the LLC Act), a person could become a member of an LLC upon its formation when (1) "the person signs the articles of organization as a member," (2) "the person signs the operating agreement as a member," or (3) "the person evidences the intent to become a member, either orally, in writing, or by other action such as transferring property or paying money to the company for an interest in the company" and "the person's admission as a member is reflected in the records of the company or is otherwise acknowledged by the company." *Id.* § 48-2c-702(1) (2010). And to become a member of an already formed LLC, unless otherwise provided in the LLC's operating agreement, the person is required to have the "consent of all members" and to sign the operating agreement. *See id.* § 48-2c-703(1). Appellees argued that because Sorensen had "alleged none of the above" and instead "only allege[d] oral agreements," his request for declaratory judgment should be dismissed.

¶14 In April 2018, at the hearing on Appellees' motion, the district court stated that it viewed the motion as "tantamount to a Rule 12(b)(6) motion," in that Appellees were arguing that Sorensen "had not pled a membership theory that would permit a trier of fact to find that [he] is a member of defendant businesses, considering the unique form of the business, the LLC form." The court found this argument to be "interesting" and, following a lengthy exchange, invited further briefing on the matter.

¶15 Appellees subsequently filed a motion for judgment on the pleadings under rule 12(c) of the Utah Rules of Civil Procedure, which the court granted at a September 2018 hearing. The court

first held that Sorensen did not allege in his first amended complaint "that he signed the articles o[f] organization or any operati[ng] agreement, nor does he allege that the defendant businesses ever acknowledged his membership," nor did "the facts set out in the complaint . . . support [Sorensen] becoming a member after the formation of defendant businesses." Additionally, after recognizing the eighteen questions Appellees listed in their earlier motion, the court held that in any event, "declaratory judgment would not . . . terminate the controversy or uncertainty" and, on that ground, declined to enter declaratory judgment.

¶16 The following month, Sorensen moved for leave to file a second amended complaint.[3] The court denied this motion on the grounds that it was "both untimely and would cause substantial prejudice to [Appellees]." Regarding timeliness, the court noted that the case had been litigated for nearly five years and that discovery had been completed some four years earlier. The court rejected Sorensen's argument "that his delay in asking for leave is justified because [Appellees] waited so long to raise the pleading deficiencies," noting that "[i]t is the responsibility of [Sorensen] to plead and prosecute his case" and "it is not the duty of [Appellees] to point out deficiencies of [Sorensen's] pleadings so that [he] can timely amend his pleadings." And regarding prejudice, the court stated that Sorensen's proposed second amended complaint "includes new substantive issues and additional facts that would require more time for preparation and require additional discovery more than four years after discovery was closed." The court further stated that allowing Sorensen to amend his complaint "after an unfavorable dispositive motion would be to

---

3. Before a hearing on Sorensen's motion could be held, Judge Glen R. Dawson retired from the bench, and responsibility for this case shifted to Judge David J. Williams.

allow [him] an unjustifiable 'redo' for inadvertence entirely within [his] control."

¶17 The court's same order memorialized its prior grant of judgment on the pleadings pursuant to rule 12(c) and dismissed Sorensen's remaining claims. Following the voluntary dismissal of Appellees' remaining counterclaims, Sorensen appealed.

ISSUES AND STANDARDS OF REVIEW

¶18 Sorensen raises two issues that we consider on appeal.[4] First, he argues that the district court erred in granting Appellees' motion for judgment on the pleadings. "We review the district court's grant of a motion for judgment on the pleadings for correctness, affording no deference to the district court." *Pierucci v. U.S. Bank, NA*, 2015 UT App 80, ¶ 8, 347 P.3d 837.

¶19 Second, Sorensen contends that the court erred in denying his second motion to amend his complaint. Because the court's denial of the motion to amend was not based on the "purported futility of the amendment," we review its denial for an abuse of discretion. *Salt Lake City Corp. v. Kunz*, 2020 UT App 139, ¶ 16, 476 P.3d 989 (quotation simplified). *See Stichting Mayflower Mountain Fonds v. United Park City Mines Co.*, 2017 UT 42, ¶ 48, 424 P.3d 72 (stating that a district court has "substantial discretion" in deciding motions for leave to amend). Accordingly, "[t]he question presented is not whether we would have granted leave to amend" but "whether we find an abuse of discretion in the district judge's decision to deny the motion." *Stichting*, 2017 UT 42, ¶ 49. In other words, "we will not reverse unless the decision

---

4. Sorensen also argues that the district court erred in concluding that declaratory judgment would not end the controversy between the parties. Because we affirm the court's grant of judgment on the pleadings, we need not address this additional argument.

exceeds the limits of reasonability." *Neztsosie v. Meyer*, 883 P.2d 920, 922 (Utah 1994) (quotation simplified). *See SA Group Props. Inc. v. Highland Marketplace LC*, 2017 UT App 160, ¶ 13, 424 P.3d 187 ("A trial court abuses its discretion if there is no reasonable basis for the decision.") (quotation simplified).

ANALYSIS

I. Judgment on the Pleadings

¶20　Although generally "not favored," "a court may enter judgment on the pleadings when the moving party is entitled to judgment on the face of the pleadings themselves." *MBNA Am. Bank, NA v. Williams*, 2006 UT App 432, ¶ 2, 147 P.3d 536 (quotation simplified). *See* Utah R. Civ. P. 12(c). In reviewing a court's grant of judgment on the pleadings, we "take[] the factual allegations of the nonmoving party as true, considering such facts and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party," *MBNA*, 2006 UT App 432, ¶ 2 (quotation simplified), "but we do not accept a complaint's legal conclusions as true," *Kirkham v. Widdison*, 2019 UT App 97, ¶ 22, 447 P.3d 89. *See Estrada v. Mendoza*, 2012 UT App 82, ¶ 2, 275 P.3d 1024 ("The grant of a motion for judgment on the pleadings is reviewed under the same standard as the grant of a motion to dismiss, i.e., we affirm the grant of such a motion only if, as a matter of law, the plaintiff could not recover under the facts alleged.") (quotation simplified).

¶21　At the time of the formation of the Sorensen/Sparks Venture companies, the LLC Act, which was subsequently repealed on January 1, 2016, *see* Utah Code Ann. § 63I-2-248(2) (LexisNexis 2016), was in effect. Section 702 of the LLC Act stated,

> (1) In connection with formation of a company, a person becomes a member of the company upon the earliest to occur of the following:

(a) when the person signs the articles of organization as a member;

(b) when the person signs the operating agreement as a member; or

(c) when:

(i) the person evidences the intent to become a member, either orally, in writing, or by other action such as transferring property or paying money to the company for an interest in the company; and

(ii) the person's admission as a member is reflected in the records of the company or is otherwise acknowledged by the company.

(2) Notwithstanding Subsection (1), a person may not become a member of the company prior to formation of the company.

*Id.* § 48-2c-702 (2010).

¶22　And section 703 of the LLC Act, in relevant part, provided,

After formation of a company, a person is admitted as an additional member of the company as provided in the operating agreement or, if the operating agreement does not provide for additional members, then:

(1) in the case of a person who is not an assignee of an interest in the company, including a person acquiring an interest directly from the company,

> upon the person's signing the operating agreement
> or other writing by which the person agrees to be
> bound by the operating agreement, and upon
> consent of all members[.]

*Id.* § 48-2c-703(1).

¶23 Here, the district court granted judgment on the pleadings, explaining, with our emphasis, that under sections 702 and 703 of the LLC Act, Sorensen's first amended complaint did not allege "that he signed the articles o[f] organization or any operati[ng] agreement," or "*that the defendant businesses ever acknowledged his membership*," nor did "the facts set out in the complaint . . . support [Sorensen] becoming a member after the formation of defendant businesses."

¶24 Sorensen argues that in reaching this conclusion, the court failed to view the facts alleged in the complaint in a light most favorable to him. He acknowledges that the first amended complaint did not allege that he signed articles of organization or an operating agreement for any of the Sorensen/Sparks Venture companies, thereby precluding him from asserting membership in the companies under subsections (a) and (b) of section 702 or under subsection (1) of section 703.[5] But Sorensen contends that he alleged facts sufficient to satisfy subsection (1)(c) of section 702 "because the Complaint unequivocally alleges both that (1) Sorensen intended to become and believed he would be a member (as evidenced by his words and actions), and (2) Sorensen's membership interests were . . . acknowledged by the LLCs in question." Specifically, Sorensen points to allegations in the complaint concerning:

---

5. Sorensen likewise does not assert that the companies' operating agreements provided a different method through which additional members could be added after their formation.

- "the original discussions and overarching oral agreement between Sorensen and Sparks, which kicked off the Sorensen/Sparks Venture";

- "how Sorensen left his other preexisting business and put in well over a year's worth of grueling labor, well beyond that of a typical full-time employee, and with little compensation to show for it, to build virtually all aspects of the business from the ground up—all in reliance upon the equity Sorensen believed he was building for himself";

- "how Sorensen single-handedly managed the Sorensen/Sparks Venture during the period in question, while Sparks did little to nothing valuable for the business";

- "actual ownership percentages that were negotiated and agreed upon by Sparks and Sorensen and . . . an operating agreement that was prepared . . . to memorialize percentages as to at least one of the businesses"; and

- how Sparks held Sorensen out as an owner of the Sorensen/Sparks Venture during meetings with potential investors in early 2014.

¶25   But these alleged facts, even when viewed in a light most favorable to Sorensen, do not satisfy the second prong of subsection (1)(c): that Sorensen's membership in the companies

was "otherwise acknowledged by the compan[ies]."[6] *Id.*
§ 48-2c-702(1)(c)(ii). As an initial matter, the LLC Act stated that
"a person may not become a member of a company prior to
formation of the company." *Id.* § 48-2c-702(2). Because the
Sorensen/Sparks Venture itself is not an LLC, any events or
agreements that took place prior to the formation of the
Sorensen/Sparks Venture companies, including "original
discussions and [an] overarching oral agreement between
Sorensen and Sparks [that] kicked off the Sorensen/Sparks
Venture," are insufficient to establish Sorensen's membership.[7]
Furthermore, section 702 is limited to membership created "[i]n

---

6. Sorensen does not allege that any of the companies' records
reflected his membership.

7. Sorensen asserts that "Utah law undeniably allows a court to
enforce contracts between parties, and nothing in the LLC Act
should be read to limit such enforcement." In support of this
assertion, he cites *Wanlass v. D Land Title*, 790 P.2d 568 (Utah Ct.
App. 1990), which states,

> Where a partner wrongfully repudiates the
> partnership and converts the assets of the
> partnership to his own use and benefit, the excluded
> partner may waive the tort or breach and sue to
> specifically enforce the partnership or joint venture
> agreement, including the remedy of a judicial
> dissolution and an accounting or the victim may
> submit to the repudiation and sue for damages for
> breach of the joint venture agreement.

*Id.* at 572 (quotation simplified). But *Wanlass* is inapplicable here
because Sorensen did not seek to "enforce the partnership or joint
venture agreement" in his first amended complaint. *See id.* And
although he did set forth a claim for repudiation of the
partnership agreement in his proposed second amended
complaint, as discussed in section II the district court did not
exceed its discretion in denying him leave to file this complaint.

connection with the formation of a company," *id.* § 48-2c-702(1), whereas section 703 provides the methods through which additional members may be added "[a]fter the formation of a company," *id.* § 48-2c-703. Thus, Sorensen's factual allegations of his membership being "otherwise acknowledged" by the various LLCs formed under the Sorensen/Sparks Venture must satisfy a very narrow window in time: the time of the companies' formation.

¶26 Sorensen's first amended complaint did not allege that the LLCs acknowledged his membership at the time of their formation. Sorensen points to two instances in which Sparks presented Sorensen as a member of the Sorensen/Sparks Venture and to the meetings in which he and Sparks negotiated a forty percent ownership interest in DPG and a twenty-five percent interest in DieselSellerz.com, but these occurred after the formation of the LLCs. Sorensen does not point to any fact in which the LLC entities "otherwise acknowledged" his membership *at the time of their formation* as contemplated by section 702. And to qualify for membership by reason of post-formation activities as contemplated by section 703, the future member must qualify for membership under the operating agreement or must sign the operating agreement or other writing, neither of which Sorensen alleged happened here. Accordingly, even when viewing the facts alleged in the complaint in the light most favorable to Sorensen, the district court did not err in granting judgment on the pleadings to Appellees.

¶27 Sorensen resists this conclusion, arguing that we "should consider the public policy and precedential implications of allowing a narrow and hyper-technical reading of the LLC Act as urged by the trial court and [Appellees]." He asserts that "[s]uch a reading places form over substance, essentially legitimizing and encouraging fraud and dishonesty in these types of situations by refusing to consider the agreements or dealings that may exist between parties—and instead considering only what certain

unilateral, self-serving paperwork reflects." Although the LLC Act was indeed expressly intended to be liberally construed, *State v. Bruun*, 2017 UT App 182, ¶ 43, 405 P.3d 905, *abrogated on other grounds by State v. Silva*, 2019 UT 36, 456 P.3d 718, subsection 702 expressly foreclosed the broader interpretation urged by Sorensen.

¶28    "[T]he legislature stated its intent that the Act 'be interpreted so as to give maximum effect to the principle of freedom of contract and to the enforceability of operating agreements of companies.'" *Id.* (quoting Utah Code Ann. § 48-2c-1901). The Legislature did so by allowing "members of an LLC . . . great flexibility when choosing how the LLC will be organized and managed, with the provisions of the LLC Act serving as default provisions that govern an LLC if its members do not include contrary language in their operating agreement or in the LLC's articles of organization." *Id.* (quotation simplified). To that end, the LLC Act provided that

> [a]n operating agreement may modify the rules of any provision of this chapter that relates to: (a) the management of the company; (b) the business purpose of the company; (c) the conduct of the company's affairs; or (d) the rights, duties, powers, and qualifications of, and relations between and among, the members, the managers, the members' assignees and transferees, and the company.

*Id.* (quoting Utah Code Ann. § 48-2c-502(1)). And section 703 provides that "[a]fter formation of a company, a person is admitted as an additional member of the company *as provided in the operating agreement*," and it sets forth methods in which members may join the LLC "if the operating agreement does not provide for additional members." Utah Code Ann. § 48-2c-703 (emphasis added).

¶29 Section 702 likewise reflects this policy of promoting the principle of freedom of contract. Subsection (1)(c) permits membership to be established upon formation of a company when "the person evidences the intent to become a member" and "the person's admission as a member is reflected in the records of the company or is otherwise acknowledged by the company." *Id.* § 48-2c-702(1)(c)(i)–(ii). But the section likewise expressly states that "[n]otwithstanding Subsection (1), a person may not become a member of the company prior to formation of the company." *Id.* § 48-2c-702(2). Accordingly, as discussed above, despite the express policy of promoting the freedom of contract, the LLC Act nonetheless expressly limited the facts establishing membership to the time of the formation of the LLC. For this reason, although many sections of the LLC Act are to be construed liberally with the policy of promoting the freedom to contract in mind, subsection (2) of section 702 limits this principle. *Cf. CCD, LC v. Millsap*, 2005 UT 42, ¶ 23, 116 P.3d 366 ("The drafters of the [LLC] Act deemed expulsion authority to be so important that, despite acknowledging the power of limited liability company members to govern their affairs by contract, they expressly barred members from bargaining for expulsion rules that varied from those set out in section 710.").

¶30 For the foregoing reasons, the district court did not err in granting judgment on the pleadings.

## II. Denial of Leave to Amend the Complaint

¶31 Rule 15 of the Utah Rules of Civil Procedure provides that courts "should freely give permission [to amend pleadings] when justice requires." Utah R. Civ. P. 15(a)(2). "The purpose of rule 15 is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Shah v. Intermountain Healthcare, Inc.*, 2013 UT App 261, ¶ 7, 314 P.3d 1079 (quotation simplified). Accordingly, "[t]rial courts should liberally allow amendments unless the amendments include

untimely, unjustified, and prejudicial factors." *Daniels v. Gamma West Brachytherapy, LLC*, 2009 UT 66, ¶ 58, 221 P.3d 256. Additionally, "many other factors, such as delay, bad faith, or futility of the amendment, may weigh against the trial court's allowing amendment." *Id.* (quotation simplified). However, "[t]here is no rigid test," and "[e]ven a single consideration or factor may be enough to justify denial of a motion for leave to amend." *Stichting Mayflower Mountain Fonds v. United Park City Mines Co.*, 2017 UT 42, ¶ 48, 424 P.3d 72. "This sort of case-specific weighing is precisely the kind of decision left to the trial court under rule 15(a)'s grant of discretion." *Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, ¶ 42, 87 P.3d 734. *See Hudgens v. Prosper, Inc.*, 2010 UT 68, ¶ 18, 243 P.3d 1275 ("A district court is best positioned to evaluate the motion to amend in the context of the scope and duration of the lawsuit[.]") (quotation simplified).

¶32 Here, the district court relied on two factors when denying Sorensen leave to file a second amended complaint in this case. First, the court held that the motion for leave to amend was untimely because litigation had been ongoing "for nearly five years, and fact discovery ha[d] been complete for more than four years." The court also noted that "this case has been scheduled five times for final pre-trial conferences." The court rejected Sorensen's argument that his motion for leave to amend was timely because Appellees "waited so long to raise the pleading deficiencies," stating that it was Sorensen's responsibility "to plead and prosecute his case." Second, the court held that because the proposed second amended complaint "includes new substantive issues and additional facts that would require more time for preparation and require additional discovery more than four years after discovery was closed," and in light of "the factual circumstances and legal developments already occurring in this case," Appellees would suffer "substantial prejudice" if Sorensen was granted leave to amend. We conclude that based on the first factor alone, the court did not exceed its "substantial discretion" in so ruling. *See Stichting*, 2017 UT 42, ¶ 48.

¶33 "There is no bright line rule against which to judge the timeliness of a motion to amend." *Cougar Canyon Loan LLC v. Walker*, 2020 UT App 176, ¶ 24, 482 P.3d 227 (quotation simplified). Generally, motions to amend have been "deemed untimely when they are filed in the advanced procedural stages of the litigation process, such as after the completion of discovery, on the eve of a scheduled trial date, or after an order of dismissal has already been entered." *Kelly*, 2004 UT App 44, ¶ 29. Furthermore, "regardless of the procedural posture of the case, motions to amend have typically been deemed untimely when they were filed several years into the litigation." *Id.* ¶ 30.

¶34 Here, several factors support the district court's untimeliness characterization. As the court noted, Sorensen's motion for leave to amend occurred approximately five years into the litigation and four years after the close of discovery. Additionally, Sorensen moved for leave to amend his complaint after the court had already granted judgment on the pleadings.[8]

---

8. Sorensen asserts that "it is notable that after years of litigation, and well beyond the typical time for pleadings challenges, [Appellees] did not bring—and the trial court did not grant—a motion for summary judgment in this matter." But other than noting the claimed irregularity, Sorensen has not argued that the district court abused its discretion in permitting Appellees to move for judgment on the pleadings when they did, *see Maxfield v. Herbert*, 2012 UT 44, ¶ 11, 284 P.3d 647 ("Within the bounds set by rule and statute . . . a district court's management of its docket and trial schedule is reviewed for an abuse of discretion.") (quotation simplified), nor has he asserted that the motion delayed trial, *see* Utah R. Civ. P. 12(c) ("After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings."). In any event, we fail to see any meaningful distinction between a judgment on the
(continued…)

Moreover, Sorensen's second amended complaint raised two additional claims that could have been included in his prior pleadings: breach of contract and repudiation of partnership agreement. Sorensen has not offered a justification for not bringing either of these claims earlier.[9] Even without addressing the substantial prejudice factor, these facts alone are sufficient to affirm the district court's denial of Sorensen's motion for leave to amend.[10] *See Stichting*, 2017 UT 42, ¶ 50 (stating that the district court relied on "classic grounds for denying a motion under rule 15(a)" when the court noted that the case had been pending for nine years and that the proposed amended complaint contained

---

pleadings and a motion for summary judgment for purposes of the timeliness calculation in this case.

9. Indeed, Sorensen does not address these additional claims in his briefing. Instead, he merely asserts that the district court did not identify what "new substantive issues" he had raised in its order of denial, which seems inconsequential given how obvious they are when comparing the first amended complaint and proposed second amended complaint.

10. Sorensen insists that "it is simply undeniable that the responsibility for any lack of timeliness or delay rests squarely with [Appellees] for failing to raise the pleadings issue sooner, and it was improper for the trial court to find lack of timeliness on Sorensen's part while absolving [Appellees] of their causative role in the timing." Although it certainly would have been within the court's discretion to take this into consideration, it likewise was not an abuse of discretion for the court not to do so. To the contrary, as stated above, "motions to amend have typically been deemed untimely when they were filed several years into the litigation," *Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, ¶ 30, 87 P.3d 734, or when filed, among other things, "after the completion of discovery . . . or after an order of dismissal has already been entered," *id.* ¶ 29, as was the case here.

additional claims that could have been included in earlier pleadings, and also that it "cited concerns regarding additional delay"); *Neztsosie v. Meyer*, 883 P.2d 920, 922 (Utah 1994) (affirming the district court's denial of leave to amend because the motion was filed after the district court had already granted summary judgment, the litigation had been ongoing for three years, and the plaintiffs "knew or should have known of the [additional] claim"); *Tretheway v. Furstenau*, 2001 UT App 400, ¶ 17, 40 P.3d 649 (affirming the district court's denial of leave to amend because the motion was filed "after the district court granted summary judgment adverse" to the plaintiff, who should have been aware of "the possibility of an adverse ruling"); *Atcitty v. Board of Educ.*, 967 P.2d 1261, 1264–65 (Utah Ct. App. 1998) (affirming the district court's denial of leave to amend because "appellant attempted to set forth new issues in his amended complaint," "appellant filed his motion approximately two-and-a-half months after the discovery deadline, and after both parties had filed summary judgment motions," and "appellant was aware of the 'new issues' in the amended complaint long before his motion was filed") (emphasis omitted).

¶35    Accordingly, because the district court's decision did not "exceed the limits of reasonability," *see Neztsosie*, 883 P.2d at 922 (quotation simplified), the court did not abuse its discretion when it denied Sorensen leave to amend his complaint for a second time.

## CONCLUSION

¶36    The district court did not err in granting judgment on the pleadings and did not exceed its substantial discretion when it denied Sorensen's motion for leave to file a second amended complaint. Affirmed.

———————