**2018 UT App 37**

## THE UTAH COURT OF APPEALS

PAUL EVANS, JEANETTE EVANS, AND KERN RIVER GAS
TRANSMISSION CO.,
Appellants,
*v.*
B&E PACE INVESTMENT LLC, GSH GEOTECHNICAL INC., SKY
PROPERTIES INC., EAGLEPOINTE DEVELOPMENT LC, SMOOT REAL
ESTATE, RALPH CANNON REAL ESTATE, AND WILFORD W. CANNON,
Appellees.

Opinion
No. 20170114-CA
Filed March 8, 2018

Second District Court, Farmington Department
The Honorable Michael G. Allphin
No. 150700392

Brent O. Hatch and Shaunda L. McNeill, Attorneys
for Appellants Paul Evans and Jeanette Evans

John A. Snow, Alex B. Leeman, John A. Hutchings,
and Burton G. Davis, Attorneys for Appellant
Kern River Gas Transmission Co.

Benson L. Hathaway Jr., Analise Q. Wilson, and
Ryan R. Beckstrom, Attorneys for Appellees B&E
Pace Investment LLC, Sky Properties Inc.,
Eaglepointe Development LC, Smoot Real Estate,
Ralph Cannon Real Estate, and Wilford W. Cannon

Craig C. Coburn and Brian D. Bolinder, Attorneys for
Appellee GSH Geotechnical Inc.

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
GREGORY K. ORME and DAVID N. MORTENSEN concurred.

HARRIS, Judge:

¶1    Permission to amend pleadings should be "freely give[n]," *see* Utah R. Civ. P. 15(a)(2), especially where permission is sought at or near the end of fact discovery, before expert discovery, before any trial date has been set, and where the grounds for at least some of the amendments were first discovered only weeks before the end of the fact discovery period. Under the circumstances of this case, we conclude that the district court exceeded its discretion when it denied two motions to amend, and therefore reverse.

BACKGROUND

¶2    On August 5, 2014, a massive landslide (the Landslide) decimated a hillside in North Salt Lake, Utah. The Landslide was approximately 500 feet wide, 500 feet long, and 60 feet deep, and displaced between 300,000 and 400,000 cubic yards of earth and debris. Among the properties located near the bottom of the Landslide was a residential home owned by Paul and Jeanette Evans (collectively, Evans) and a tennis club (the Tennis Club). Both Evans and the Tennis Club claim that their properties were damaged by the Landslide.

¶3    On April 21, 2015, the Tennis Club sued the City of North Salt Lake, various developers and real estate entities (Developers), and John Does[1] for causes of action related to the Landslide. Developers soon answered, and filed counterclaims against the Tennis Club as well as third-party claims against various entities, including Kern River Gas Transmission Co.

---

1. A John Doe is "[a] fictitious name used in a legal proceeding to designate a person whose identity is unknown." *John Doe*, Black's Law Dictionary (10th ed. 2014).

(Kern River), GSH Geotechnical Inc. (GSH),[2] and Evans. In July 2015, Evans answered Developers' claims, and also filed counterclaims against Developers and various John Does for, among other things, negligence, nuisance, breach of fiduciary duty, and fraudulent non-disclosure. Later, in January 2016, the district court consolidated into this action a separate lawsuit filed by Kern River against Developers and GSH, in which Kern River brought claims for negligence, nuisance, and injunctive relief. After the consolidation, the lawsuit then pending before the district court involved, by our count, seventeen parties represented by fifteen different law firms.

¶4     In February 2016, the district court entered a stipulated case management order that arranged the various parties involved in the litigation into ten different "sides," and allowed for each "side" to conduct five elective depositions, over and above twenty-eight depositions that all parties agreed were essential. The order set the fact discovery deadline for September 30, 2016; the expert discovery deadline for April 28, 2017; and the deadline for dispositive motions for May 31, 2017. The district court subsequently extended each of those deadlines by ninety days, with the close of fact discovery set to occur around the end of December 2016.

¶5     Although the case management order makes no mention of it, the parties (apparently on their own) mutually decided to work toward a mediation and, in an effort to limit litigation costs, agreed that, prior to the mediation, they would limit themselves to written discovery and to six or seven depositions that were deemed the most critical. After completing that limited discovery, the parties attempted mediation as scheduled in June

---

2. GSH was originally a party to this appeal. Since the filing of the notice of appeal, however, all claims involving GSH have been dismissed.

2016, but were unable to reach a settlement at the mediation conference. The parties did not completely abandon settlement efforts, however; they continued to informally discuss the possibility of settlement, even after the June conference, and the mediator remained involved until December 2016.

¶6      After the mediation conference proved unsuccessful, the parties attempted to proceed with fact discovery pursuant to the case management order. They soon began to discuss dates for the remaining depositions, but coordinating the schedules of fifteen different law firms proved difficult and required significant lead time. Depositions noticed in July ended up taking place as late as November. Depositions noticed in September ended up taking place as late as December.

¶7      On June 10, 2016, as the parties were preparing for the mediation conference, and roughly six months before the end of fact discovery, Evans filed a motion for leave to amend their pleadings. Specifically, Evans sought permission to add negligence claims against GSH and another engineering firm related to their alleged involvement with geotechnical work on the hillside. Due to the impending mediation, Evans agreed to extend the deadline for any response to its motion to amend "until mediation was completed." Because the mediator remained involved and settlement discussions continued informally even after the failed mediation conference, Evans did not consider the mediation truly "completed" until December 2016, when the mediator's involvement ended. Thus, Evans did not submit the June 2016 motion to amend for the court's decision until December 9, 2016.

¶8      Meanwhile, in August 2016, Kern River filed its own motion seeking leave to amend its pleadings. Specifically, Kern River asked permission to add additional cross-claims against Developers alleging negligence, nuisance, and unjust enrichment. The parties did not postpone briefing on this

motion, and Kern River submitted it for decision in due course. In October 2016, the district court granted Kern River's motion and allowed the amendment to include the additional claims.

¶9    On December 13, 2016, with only a few weeks left in the fact discovery period, and while the parties were finishing up depositions, the district court consolidated yet another case into this action. In that other case, Questar Gas Company (Questar) had brought negligence and nuisance claims against the City of North Salt Lake related to the Landslide.

¶10    That same day, the district court denied Evans's June 2016 motion to amend, concluding that the motion was untimely because, even though it had been filed in June, it had not been submitted for decision until December, and explaining that "[t]he close of the extended date of fact discovery is now only sixteen days away." A few days later, Evans asked the court to reconsider its ruling, asserting that any delay in submitting the motion for decision was due to professional courtesies Evans's counsel had extended to GSH related to the ongoing settlement discussions. The district court denied the motion to reconsider.

¶11    Near the end of December, as the fact discovery period was ending, three additional motions to amend were filed. On December 29, 2016, Evans moved yet again to amend their pleadings. Evans again sought to add negligence claims against GSH (but this time not against the other firm). In addition, this time Evans sought to add various new claims (such as breach of fiduciary duty, civil conspiracy, and pattern of unlawful activity) against the existing Developers and/or their principals, including claims alleging that some of the Developer entities were the alter egos of their principals. On December 23, 2016, the Tennis Club filed a motion for leave to amend, seeking to add new claims against the existing Developers and/or their principals that were similar to the claims Evans sought to add. And on December 30, 2016, Kern River filed a motion seeking leave to amend, asking

for permission to bring negligence claims against two engineering firms, Bingham and Geostrata.

¶12 All of the parties that moved to amend—the Tennis Club, Evans, and Kern River—asserted that the facts supporting the filing of many of these new claims did not come to light until the depositions taken between September and December 2016, and that they were therefore unable to bring these claims earlier.[3] To take one specific example, Kern River asserts that a principal of one of the Developers initially testified that Bingham was not

---

3. Whether Evans or Kern River actually did discover relevant facts late in the fact discovery period that they did not already know is a factual issue. Indeed, on appeal, Developers contest Evans's and Kern River's assertion that, before taking the depositions that occurred late in the fact discovery period, they lacked sufficient factual knowledge to bring their new claims. In its various rulings on the motions to amend, however, the district court did not mention this issue, and certainly did not endeavor to resolve the contested factual questions. We can, of course, affirm a district court's decision on any alternative ground apparent from the record. *See Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158. However, because we are in no position to resolve factual disputes that the district court left unresolved, it is not apparent on this record that Evans's and Kern River's factual assertions are incorrect. Thus, for the purpose of our analysis in this opinion, we simply assume that the factual claims made by the movants are true. Certainly, if the district court had made factual findings on this issue, we would have deferred to those findings in the same way we defer to other factual findings made by a trial court. *See, e.g., Outsource Receivables Mgmt., Inc. v. Bishop*, 2015 UT App 41, ¶ 5, 344 P.3d 1167 (stating that "we review a trial court's factual findings under the deferential clearly erroneous standard") (citation and internal quotation marks omitted)).

involved in the geotechnical work on the hillside, but that in one of the later depositions, a construction manager for one of the Developers testified that Bingham was indeed involved in the geotechnical work on the hillside.

¶13 The district court denied all three motions, explaining that "[w]hile no trial date has been set, it is clear that this case is in the advanced procedural stages of litigation and that alterations to claims at this point are untimely." The court also determined that "adding new parties and new claims at this late stage of litigation will result in prejudice to those parties," but the only prejudice the district court identified was that "fact discovery is closed" and that "[f]act discovery is a crucial element in preparing for trial."

¶14 Evans and Kern River now seek interlocutory review of the district court's denial of their respective motions to amend.[4] We granted them leave to appeal, and now consider their claims.

ISSUE AND STANDARD OF REVIEW

¶15 Both Evans and Kern River argue that the district court erred by denying their respective motions to amend. "We review a district court's decision on a motion to amend under an abuse of discretion standard." *Tretheway v. Furstenau*, 2001 UT App 400, ¶ 7, 40 P.3d 649; *see also Stichting Mayflower Mountain Fonds v.*

---

4. The Tennis Club elected not to pursue an interlocutory challenge to the district court's order. Instead, because the statute of limitations had not yet run on its new claims, it elected to file a separate lawsuit containing the claims it had sought leave to file. After this court granted permission for Evans and Kern River to bring this interlocutory appeal, the district court stayed all matters in both this case and the Tennis Club's new case pending the outcome of this appeal.

*United Park City Mines Co.*, 2017 UT 42, ¶¶ 48–49 (stating that the question on appeal is "whether we find an abuse of discretion in the district judge's decision to deny the motion," and stating that a district judge has "substantial discretion" in making that determination).

ANALYSIS

¶16 Rule 15 of the Utah Rules of Civil Procedure instructs district courts that they "should freely give permission [for a party to amend its pleadings] when justice requires." Utah R. Civ. P. 15(a)(2). "The purpose of rule 15 is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Shah v. Intermountain Healthcare, Inc.*, 2013 UT App 261, ¶ 7, 314 P.3d 1079 (emphasis, brackets, citation, and internal quotation marks omitted). Trial courts should therefore "liberally allow amendments unless the amendments include untimely, unjustified, and prejudicial factors." *Daniels v. Gamma West Brachytherapy, LLC*, 2009 UT 66, ¶ 58, 221 P.3d 256.

¶17 In determining whether to allow a proposed amendment, courts are instructed to generally focus on three main factors: (1) timeliness; (2) prejudice; and (3) justification. *Swan Creek Village Homeowners Ass'n v. Warne*, 2006 UT 22, ¶ 20, 134 P.3d 1122. "[M]otions to amend are typically deemed untimely when they are filed in the advanced procedural stages of the litigation process, such as after the completion of discovery, on the eve of a scheduled trial date, or after an order of dismissal has already been entered," or where the motion is filed "several years into the litigation." *Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, ¶¶ 29–30, 87 P.3d 734.

¶18 In evaluating the "prejudice" factor, courts must keep in mind that "a showing of simple prejudice is not enough to support a denial of a motion to amend." *Id.* ¶ 31. Indeed, "almost

every amendment of a pleading will result in some practical prejudice to the opposing party." *Id.* (citation and internal quotation marks omitted). Instead, for this factor to support denial of the motion, the nonmoving party must suffer "undue or substantial prejudice" that is "unavoidable." *Id.* "Mere inconvenience to the opposing party is not grounds to deny a motion to amend." *Id.* (emphasis, citation, and internal quotation marks omitted). The key to this part of the inquiry is whether "the opposing side would be put to unavoidable prejudice by having an issue adjudicated for which he or she had no time to prepare." *Swan Creek*, 2006 UT 22, ¶ 21, (emphasis, brackets, citation, and internal quotation marks omitted). A motion to amend may well be "prejudicial when the nonmoving party would have little time to prepare a response before trial," *Daniels*, 2009 UT 66, ¶ 59, but if any such prejudice can be avoided with a reasonable, brief, and targeted extension of the fact discovery cutoff date, prejudice may not be present, *see Timm v. Dewsnup*, 851 P.2d 1178, 1183 (Utah 1993) (noting that "[t]here can be no prejudice" if the court "give[s] ample time for an answer" to the new claims (citations and internal quotation marks omitted)); *see also DeLuca v. Winer Indus., Inc.*, 857 F. Supp. 606, 608 (N.D. Ill. 1994) (granting a motion to amend that was filed on "the day fact discovery closed," and determining that granting the motion "would not unduly prejudice [defendants] if the fact discovery deadline is extended for the limited purpose of completing discovery on the additional claims").

¶19    With regard to justification, "the analytic thrust should . . . be focused on the reasons offered by the moving party for not" raising the issues earlier. *Kelly*, 2004 UT App 44, ¶ 38. In cases where "the party knew of the events or claims earlier yet failed to plead them due to a dilatory motive, a bad faith effort during the pleading process, or unreasonable neglect in terms of pleading preparation," the justification factor will weigh against allowing the amendment. *Id.* On the other hand, "'where the party's prior knowledge was minimal, or where it was instead

based on suspicious or inconclusive evidence, the party's decision to hold off on pleading those allegations until reliable confirmation could be obtained'" should not be held against that party. *Swan Creek*, 2006 UT 22, ¶ 22 (quoting *Kelly*, 2004 UT App 44, ¶ 38).

¶20 Although courts should consider all three factors, "the circumstances of a particular case may be such that a court's ruling on a motion to amend can be predicated on only one or two of the particular factors." *Kelly*, 2004 UT App 44, ¶ 42. The applicability of the three factors will vary from case to case, but our supreme court has emphasized that, in many cases, the factor that "the trial court should *primarily* consider" is "whether granting the motion would subject the opposing party to unavoidable prejudice." *Aurora Credit Servs., Inc. v. Liberty West Dev., Inc.*, 970 P.2d 1273, 1282 (Utah 1998) (emphasis added); *see also Kelly*, 2004 UT App 44, ¶ 31 (observing that "courts should focus on whether the nonmoving party would suffer prejudice if the motion to amend is granted" (citation and internal quotation marks omitted)).

¶21 Here, Evans and Kern River assert that their respective motions to amend were timely, that no unavoidable prejudice will result from allowing the amendment, and that they had good reason for waiting until December 2016 to bring the claims. We agree with these assertions.

¶22 The district court determined that the motions to amend filed in late December 2016 were untimely because "[f]act discovery is now closed more than a year and a half after the filing [of] this case and after being extended twice," and stated that, "[w]hile no trial date has been set, it is clear that this case is in the advanced procedural stages of litigation and that alterations to claims at this point are untimely." It is certainly true that the case had been pending for about a year and a half when the motions were filed, and that the fact discovery

deadline had already been extended. But the motions were filed right at the end of the fact discovery period, which is not necessarily a tardy time to file such motions, at least not in cases where the moving party learns facts during the fact discovery period that put it on notice that it might possess valid claims. And we simply disagree with the district court's characterization that the case was "in the advanced procedural stages of litigation"—after all, fact discovery was just concluding, expert discovery had not yet even begun, and no trial date had been set.

¶23    We acknowledge that the motions to amend, at least with regard to some of the new claims, could perhaps have been filed a few weeks earlier, and that this very well might have made a difference to the district court, given that the court granted Kern River's earlier motion to amend in October 2016, and allowed consolidation of the Questar case in mid-December. Parties should certainly endeavor to bring new claims to the attention of the court as soon as possible after the relevant facts are discovered. But in this case, Evans and Kern River claim to have been discovering relevant facts well into December 2016, and we do not think it unreasonable under the circumstances of this case for Evans and Kern River to have waited until December to file all of their asserted new claims in one omnibus motion.

¶24    In our view, the timeliness factor does not weigh against amendment under the circumstances presented here. We consider the procedural posture of this case to be comparable to other cases in which an appellate court has reversed a district court's denial of a motion to amend. *See, e.g.*, *Gillman v. Hansen*, 486 P.2d 1045, 1046 (Utah 1971) (holding that the district court erred in denying a motion to amend when "the case had not been set for trial" and "the only adverse effect which the amendment could have on the plaintiff might be to require the taking of a further deposition of the defendant"); *Nunez v. Albo*, 2002 UT App 247, ¶ 33, 53 P.3d 2 (holding that the district court erred in denying a motion to amend when "no trial date had

been set, no expert discovery had taken place, and discovery was still on-going").[5]

¶25 We are likewise unconvinced that any undue or substantial unavoidable prejudice would be visited upon any of the defendants if Evans and Kern River are allowed to bring their new claims in this action. The only prejudice identified by either the district court or by any of the defendants is that, at the time the motions were filed, fact discovery was ending and defendants would not have an opportunity to conduct discovery

---

5. We also note, in connection with our discussion of timeliness, that the statute of limitations had not yet run (and, according to Evans, has still not yet run) on the new claims that Evans, Kern River, and the Tennis Club wanted to bring by way of their December 2016 motions to amend. Indeed, the Tennis Club demonstrated this by filing a new lawsuit upon learning that it would not be permitted to bring those new claims into this case. While consideration of whether the statute of limitations has run on the putative new claims is not one of the factors that the case law instructs courts to weigh, it is a factor that may sometimes be relevant, and the three main factors are not necessarily exclusive. *See Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, ¶ 39, 87 P.3d 734 (observing that in addition to evaluating timeliness, prejudice, and justification, "Utah law does not preclude trial courts from considering other factors in their rule 15(a) determinations"). In many cases, whether the statute of limitations has run on the proposed new claims can, as a practical matter, change the analysis. If a party can (as the Tennis Club did here) simply file a new lawsuit if the motion to amend is denied, in some cases that fact may weigh in favor of granting the motion to amend, because it may be more efficient in the long run for a court to simply allow the new claims to be brought in the original action than to deny the motion to amend and then have to wrestle later with motions to consolidate.

and fully defend themselves against the new claims. But this sort of prejudice can be easily remedied by a brief, tailored extension to the discovery deadlines to allow the defendants to conduct discovery on those new claims. Indeed, Evans and Kern River, in their motions to amend, indicated that they would have no objection to such an extension.

¶26    We do not mean to suggest that extending or reopening discovery deadlines can never constitute "undue or substantial" prejudice. *See Kelly*, 2004 UT App 44, ¶ 31 (citation and internal quotation marks omitted). Certainly, if trial is imminent and reopening discovery would necessitate moving the trial date, or if expert discovery has been completed and allowing new claims would put the parties to the expense of re-deposing (or obtaining supplemental reports from) experts, the situation would be different. But where facts underlying potential new claims are discovered for the first time during fact discovery itself, and the party seeking to bring the new claims files its motion to amend as fact discovery is ending, there will usually not be undue and substantial prejudice to any party by allowing the amendment and permitting a reasonable extension of fact discovery that is tailored to address the new claims.

¶27    In this case, any prejudice can easily be ameliorated by allowing for a brief and targeted extension of the discovery deadlines. This is not a case where "the ongoing passage of time makes it increasingly difficult for the nonmoving party to effectively respond to the new allegations or claims." *Id.* ¶ 30. Under the circumstances of this case, the prejudice factor does not weigh in favor of denying the motion to amend.

¶28    Finally, with regard to justification, there is no indication, on the facts of this case, that Evans and Kern River acted with a "dilatory motive, bad faith, or unreasonable neglect." *Hudgens v. Prosper, Inc.*, 2010 UT 68, ¶ 18, 243 P.3d 1275 (citation and internal quotation marks omitted). One reason for the delay was

that all parties participated in good faith in a mediation conference, and agreed to conduct only limited discovery prior to the mediation. But the main reason Evans and Kern River did not bring many of these claims earlier was that they claim not to have had a sufficient factual basis to bring them until *after* they participated in the depositions that took place between September and December 2016. Given parties' obligations, pursuant to rule 11 of the Utah Rules of Civil Procedure, not to bring claims for which they possess an insufficient factual basis, waiting until that factual basis is present is a perfectly reasonable justification for not bringing the claims earlier. On balance, we think it better to encourage parties to wait to file claims until they possess a sufficient factual basis to bring them, instead of encouraging parties to bring marginal claims earlier in the proceedings for which supporting evidence may be sketchy.

¶29 Accordingly, none of the three factors weigh in favor of refusing to allow amendment of pleadings in this case. We therefore conclude that the district court should have granted the motions to amend, and that it exceeded its discretion in denying them.

CONCLUSION

¶30 In this case, "justice require[d]" granting the motions to amend filed by Evans and Kern River. *See* Utah R. Civ. P. 15(a). We therefore reverse the district court's orders denying the motions to amend, and remand the case for further proceedings consistent with this opinion.

—————