**2020 UT App 176**

## THE UTAH COURT OF APPEALS

COUGAR CANYON LOAN LLC,
Appellant,
*v.*
LISA M. WALKER, ZIONS BANCORPORATION NA,
AND SALT LAKE COUNTY,
Appellees.

Opinion
No. 20190193-CA
Filed December 31, 2020

Third District Court, Salt Lake Department
The Honorable Richard E. Mrazik
No. 180900186

S. Ian Hiatt and Jefferson W. Gross,
Attorneys for Appellant

Gregory S. Roberts, Michael D. Mayfield, and
Carol Ann Funk, Attorneys for Appellee
Zions Bancorporation, NA

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES KATE APPLEBY and DIANA HAGEN concurred.

HARRIS, Judge:

¶1      Cougar Canyon Loan LLC (Cougar Canyon) acquired an interest in—but not full ownership of—real property (the Property) that was encumbered by a large lien held by Zions Bancorporation NA (Zions). Cougar Canyon then brought a partition action, naming Zions and all other putative interest holders as defendants, and asking the district court to order the Property sold and distribute the proceeds. In its answer to Cougar Canyon's complaint, however, Zions neglected to include certain information required by Utah's partition statute (the Partition Statute). *See* Utah Code Ann. § 78B-6-1207

(LexisNexis 2018). After Cougar Canyon filed a motion asking the court to prohibit Zions from introducing evidence of its lien, the court allowed Zions to amend its answer, on the eve of trial, to include the statutorily required information. Cougar Canyon appeals, challenging the court's decision to grant Zions leave to amend its answer. We affirm.

## BACKGROUND

¶2    In the mid-2000s, Lisa M. Walker and her husband Blair Walker owned the Property as joint tenants. In 2007, the Walkers executed and delivered to Zions a Home Equity Line Credit Agreement and Disclosure (Line of Credit), wherein Zions agreed to loan the Walkers up to $960,000. The Line of Credit was secured by a deed of trust (Trust Deed) on the Property. Over the next few years, Zions loaned money to the Walkers pursuant to the Line of Credit, and at some point prior to 2018, the Walkers defaulted on their obligations under the Line of Credit. In July 2018, Zions initiated nonjudicial foreclosure proceedings by recording, through a trustee, a notice of default against the Property, alleging that the Walkers had failed to repay the loan as required, and indicating that Zions had elected to sell the Property. In the notice of default, Zions stated that the outstanding unpaid principal balance on the Line of Credit was $956,385.08. Zions mailed a copy of the notice of default to all persons it believed had an interest in the Property, including Cougar Canyon.

¶3    Cougar Canyon acquired its interest in the Property in 2017, after it prevailed in a securities fraud lawsuit and obtained a $4 million judgment against Blair Walker and others. *See Cougar Canyon Loan, LLC v. Cypress Fund, LLC*, 2019 UT App 47, ¶ 4, 440 P.3d 884. Based on that judgment, Cougar Canyon executed upon and sold Blair Walker's interest in the Property, and was itself the winning bidder at the ensuing November 2017

sheriff's sale. Thereafter, Cougar Canyon and Lisa Walker owned the Property together, as tenants in common.

¶4 After acquiring its interest in the Property, Cougar Canyon initiated this action in January 2018, seeking partition of the Property by sale and asking for "distribution of the proceeds to the parties in accord with their interests." Cougar Canyon asserted that, as a tenant in common, it was entitled to a one-half interest in the Property, with Lisa Walker entitled to the remaining one-half interest. The complaint named as defendants all persons and entities Cougar Canyon believed might have an interest in the Property, including Zions.[1]

¶5 In its original answer, filed in March 2018, Zions noted that, in 2007, it had "recorded a revolving credit deed of trust against [the Property] in a first lien position." But in that answer, Zions did not provide any other details about its lien, such as the original amount of the loan or the then-current outstanding balance owed. However, as noted, Zions sent Cougar Canyon a copy of the notice of default some weeks later in connection with its nonjudicial foreclosure efforts; that notice included Zions' estimate of the then-outstanding principal balance.

¶6 In June 2018, during the early stages of the case, Cougar Canyon made initial disclosures, setting forth the witnesses and documents it planned to use at trial to prove its claims. Some of the other defendants followed suit, but Zions did not serve any initial disclosures, at least not during the early stages of the case.

¶7 As the case proceeded, and before any meaningful discovery had been conducted, the parties came before the

---

1. The claims related to all of the other named defendants were resolved, in some manner, by the district court, and no defendant other than Zions is a party to this appeal; accordingly, only the claims related to Zions are at issue here.

district court in early August 2018 for a hearing and, while discussing scheduling matters, Cougar Canyon noted that Zions had initiated nonjudicial foreclosure proceedings. In light of the pendency of those proceedings, the parties agreed that an effort should be made to expedite trial on Cougar Canyon's partition action, so that the partition trial could be completed before any sale of the Property occurred in connection with Zions' nonjudicial foreclosure efforts. The court then scheduled a trial to occur on September 25, 2018, less than two months hence, and set other expedited deadlines, including an August 31 deadline for amending pleadings.

¶8 Zions did not seek leave to amend its answer by the August 31 deadline. Fifteen days later, however, on September 14, it did seek such leave; its request was spurred by Cougar Canyon's motion in limine,[2] filed on September 12, that sought an order precluding Zions from introducing any evidence of its interest in the Property, on the basis that Zions had failed to comply with the Partition Statute's requirement that certain information about its interest be included in its answer, *see* Utah Code Ann. § 78B-6-1207 (LexisNexis 2018), and had failed to serve initial disclosures. Zions responded to Cougar Canyon's motion in limine by, among other things, belatedly filing its initial disclosures and by filing a motion seeking leave to amend its answer to include the statutorily required information. Attached to Zions' various mid-September filings were copies of the Line of Credit, Trust Deed, and associated documents, as well as its statement that the outstanding amount then owed on the Line of Credit was $1,003,949.53.

---

2. "A motion in limine is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered." *State v. Bermejo*, 2020 UT App 142, ¶ 8 n.4, 476 P.3d 148 (quotation simplified).

¶9     After full briefing, the two motions—Cougar Canyon's motion in limine and Zions' motion to amend—came before the district court for oral argument on September 24, the day before the trial was to be held. At the hearing, Cougar Canyon acknowledged that, before filing its complaint in January, it ran a title search and learned of the existence and date of Zions' lien as well as "what the original principal amount was." Cougar Canyon also did not "dispute receiving the notice of default" in July 2018, but it nevertheless asserted that Zions had waived any right to assert its lien when it failed to include in its answer the information required by the Partition Statute. For its part, Zions asserted, among other things, that Cougar Canyon would not be prejudiced by any amendment, because it was fully aware from other sources, including the nonjudicial foreclosure proceedings, of all the information that the statute required.

¶10     At the conclusion of the hearing, the court denied Cougar Canyon's motion in limine and granted Zions' motion for leave to amend, allowing Zions to file an amended answer containing the statutorily required information. The court also postponed the trial, and allowed Zions to serve belated initial disclosures. However, the court ordered Zions to pay reasonable attorney fees and costs incurred by Cougar Canyon, "which [Cougar Canyon] would not have incurred had Zions . . . filed its original answer" in compliance with the Partition Statute. The court later quantified that fee award, ordering Zions to pay Cougar Canyon $20,208.75 in attorney fees and costs.

¶11     Following the court's ruling on the two motions, the parties eventually stipulated to most of the relevant facts,[3]

---

3. In the stipulation, the parties agreed that Cougar Canyon, by stipulating to certain relevant facts, had "in no way waived or otherwise impaired its right to appeal the [district court's] decision to allow Zions . . . to amend its [a]nswer."

including the fact that the "payoff estimate amount" on the Line of Credit was $1,035,895.93, and based on those stipulated facts, the court ordered the Property to be sold. At the sale, Zions purchased the Property with a credit bid of $930,526.00, and the trustee conveyed the Property to Zions by trustee's deed. There were no excess proceeds.

ISSUES AND STANDARDS OF REVIEW

¶12    Cougar Canyon now appeals, challenging the district court's order granting Zions' motion to amend. In so doing, it asks us to consider three issues. First, it asserts that the district court misinterpreted and misapplied the Partition Statute, a law Cougar Canyon construes as mandating waiver of any claims related to any liens not particularly described in a litigant's original answer. "We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions." *State v. Outzen*, 2017 UT 30, ¶ 5, 408 P.3d 334 (quotation simplified).

¶13    Second, and in the alternative, Cougar Canyon asserts that the district court inappropriately granted Zions' motion to amend its answer. District courts have "substantial discretion" in considering motions to amend, and "[o]ur review under this discretionary standard is deferential." *See Stichting Mayflower Mountain Fonds v. United Park City Mines Co.*, 2017 UT 42, ¶¶ 48–49, 424 P.3d 72. "The question presented is not whether we would have granted leave to amend. It is whether we find an abuse of discretion in the district judge's decision." *Id.* ¶ 49.

¶14    Third, and also in the alternative, Cougar Canyon challenges the district court's decision to allow Zions to serve belated initial disclosures, instead of prohibiting Zions from introducing any evidence about its lien as a sanction for its failure to serve timely disclosures. We review a district court's ruling on sanctions under rule 26 of the Utah Rules of Civil

Procedure using an abuse of discretion standard. *See Keystone Ins. Agency, LLC v. Inside Ins., LLC*, 2019 UT 20, ¶ 12, 445 P.3d 434 (stating that appellate courts "review a district court's decision on sanctions under rule 26(d)(4) . . . for an abuse of discretion").

ANALYSIS

I

¶15  Cougar Canyon first argues that the district court erroneously interpreted the Partition Statute. The text of the relevant provision states as follows:

> (1)  All defendants shall set forth in their answers, fully and particularly, the origin, nature, and extent of their respective interests in the property.
>
> (2)  If a defendant claims a lien on the property by mortgage, judgment, or otherwise, the defendant shall state the original amount and date of the mortgage or judgment, and the amounts remaining unpaid. The defendant shall also state whether the mortgage or judgment has been secured in any other way, and if secured, the extent and nature of the security. If this information is not provided, the defendant shall be considered to have waived any rights to the lien.

Utah Code Ann. § 78B-6-1207 (LexisNexis 2018). In Zions' original answer, it mentioned that it had a lien on the Property based on a "revolving credit deed of trust," but it did not provide the original amount and date of the Line of Credit, or the amount that, at the time, remained unpaid. It is therefore apparent that Zions' original answer did not include the information required by the Partition Statute.

¶16 Cougar Canyon asserts that, because Zions' original answer did not include the statutorily required information, Zions should be "considered to have waived any rights to" the Line of Credit. *See id.* § 78B-6-1207(2). This assertion formed the basis for Cougar Canyon's motion in limine, wherein it asked the district court to bar Zions from introducing any evidence of the Line of Credit, because of its noncompliant original answer. For its part, Zions asserts that it complied with the statute by including the required information in its amended answer, a proposition with which the district court agreed. The question before us, then, is whether the Partition Statute requires that the information be included in the *original* answer, or whether the requirements of the statute are satisfied if the information is included in an authorized and duly filed *amended* answer.

¶17 The Partition Statute requires merely that "defendants shall set forth" the required information "in their answers." *See id.* § 78B-6-1207(1). In the statute's text, the term "answers" is unaccompanied by modifiers that might limit the meaning of the term to a particular subset of all answers. *See id.* And the Partition Statute does not purport to provide any specialized meaning of the term "answers." *See id.* We therefore apply the plain meaning of the term. *See State v. Rushton*, 2017 UT 21, ¶ 11, 395 P.3d 92 (stating that, "when we tackle questions of statutory construction, our overarching goal is to implement the intent of the legislature," and "the best evidence of the legislature's intent is the plain language of the statute itself" (quotation simplified)); *see also United States v. Porter*, 745 F.3d 1035, 1042 (10th Cir. 2014) (applying the "so-called 'general-terms canon' that holds that 'general terms are to be given their general meaning'" (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 101 (2012))).

¶18 And the plain meaning of the term "answers" is undoubtedly broad enough to include amended answers that are

duly filed according to our rules of civil procedure, including amended answers for which filing permission has been obtained from the district court. *See Answer*, Merriam-Webster's Law Dictionary, https://www.merriam-webster.com/dictionary/answer#legalDictionary [https://perma.cc/4BMC-8JAC]  (defining answer as "the defendant's written response to the plaintiff's complaint in a civil suit in which he or she may deny any of the plaintiff's allegations, offer any defenses, and make any counterclaims against the plaintiff"); *Answer*, Law.com Legal Dictionary, https://dictionary.law.com/Default.aspx?selected=2407 [https://perma.cc/RFY6-2DD2] (defining answer as "a written pleading filed by a defendant to respond to a complaint in a lawsuit filed and served upon that defendant"); *see also Answer*, Black's Law Dictionary (11th ed. 2019) (stating that an "answer" is the "defendant's first pleading that addresses the merits of the case, usu[ally] by denying the plaintiff's allegations," and "set[ting] forth the defendant's defenses and counterclaims"); 61A Am. Jur. 2d *Pleading* § 264 (2020) ("A letter, or any document, that is filed with the court and substantively responds to the complaint may constitute an answer, notwithstanding its failure to comply with all of the technical requirements of the rules of civil procedure. . . . Moreover, if a document constitutes an answer for any purpose, it should constitute an answer for all purposes."). Like any other pleading, answers can be amended, subject to the strictures of rule 15 of the Utah Rules of Civil Procedure. Once an amended answer is filed, that answer becomes the legally operative answer, definitively setting forth a party's current defenses. *See, e.g.*, *Talmer Bank & Trust v. Malek*, 651 F. App'x 438, 443 (6th Cir. 2016) (stating that a defendant's "[a]mended [a]nswer supersedes his original one, and is thus the operative answer in [the] case"). Therefore, applying the general-terms canon to the Partition Statute, the plain meaning of "answer[]," as that term is generally understood, refers to any duly filed answer, including the operative answer in a given case.

¶19    Moreover, nothing in the text of the Partition Statute suggests that the legislature intended to curtail the ability of defendants in partition actions to amend their answers—something that would materially affect the application of the Utah Rules of Civil Procedure to such situations. The district court was similarly unconvinced, opining that it had seen no authority "that says that [the Partition Statute] precludes any effort under the Rules of Civil Procedure to amend [a] pleading." We find the court's analysis on this point to be sound. "We will not infer substantive terms into the text that are not already there. Rather, the interpretation must be based on the language used, and we have no power to rewrite the statute to conform to an intention not expressed." *Bryner v. Cardon Outreach, LLC*, 2018 UT 52, ¶ 21, 428 P.3d 1096 (quotation simplified).[4]

¶20    The Partition Statute requires only that defendants "set forth in their answers" certain information about their claimed interest in the property at issue. *See* Utah Code Ann. § 78B-6-1207(1). The term "answer," construed according to its plain and general meaning, is not limited to merely the first or original answer; rather, a defendant can satisfy the requirements of the Partition Statute by including the required information in a duly filed amended answer. Cougar Canyon acknowledges that Zions' amended answer included all of the statutorily required information. Accordingly, to the extent that Zions' amended answer was duly and properly filed, Zions has satisfied the requirements of the Partition Statute, and has not waived its rights under the Line of Credit.

---

4. Zions urges us to go a step further and determine that "Cougar Canyon's proposed reading" of the Partition Statute would render it "unconstitutional." But because we conclude that Cougar Canyon's interpretation is inconsistent with the plain meaning of the Partition Statute, we need not address Zions' constitutionality argument.

II

¶21    We must next assess Cougar Canyon's contention that the district court abused its discretion by allowing Zions to file an amended answer on the eve of the scheduled trial.[5] If Cougar Canyon is correct that the court abused its discretion by allowing the amendment, then no amended answer should have been filed in this case and—by failing to include the required information in its original answer—Zions would have indeed waived its rights under the Line of Credit. But if the court did not abuse its discretion by allowing the amendment, then Zions fully complied with the mandates of the Partition Statute, and did not waive its rights under the Line of Credit.

¶22    The rules of civil procedure instruct district courts to "freely give permission" for a party to amend its pleading "when justice requires." *See* Utah R. Civ. P. 15(a)(2). And in general "our legal system strongly prefers to decide cases on their merits." *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011); *see also Malmstrom v. Second East Apartment Co.*, 278 P. 811, 815 (Utah 1929) (noting the preference to decide cases on their

---

5. Zions argues that Cougar Canyon failed to properly preserve its right to challenge the court's decision to allow the amendment, because Cougar Canyon "acknowledged the district court had the authority" to grant the motion to amend. Zions' argument is inapposite. Cougar Canyon's attorney stated that the court "ha[d] the discretion" under rule 15 to allow Zions to file an amended answer, but then continued on to urge the court not to exercise its discretion to grant Zions' motion, asserting that there were "other considerations that augur against" allowing the amendment. Considered in context, counsel's offhand comment about the court's discretion does not support Zions' assertion that Cougar Canyon failed to preserve its challenge to the court's exercise of its discretion.

merits rather than technical grounds). To these ends, district "courts should liberally allow amendments [to pleadings] unless the amendments include untimely, unjustified, and prejudicial factors." *Daniels v. Gamma West Brachytherapy, LLC*, 2009 UT 66, ¶ 18, 221 P.3d 256. "In ruling on a motion to amend, a [district] court must weigh three factors: the timeliness of the motion, the justification for the delay, and the resulting prejudice to the responding party." *Reller v. Argenziano*, 2015 UT App 241, ¶ 24, 360 P.3d 768. "Although courts should consider all three factors, the circumstances of a particular case may be such that a court's ruling on a motion to amend can be predicated on only one or two of the particular factors." *Evans v. B&E Pace Inv. LLC*, 2018 UT App 37, ¶ 20, 424 P.3d 963 (quotation simplified). "The applicability of the three factors will vary from case to case," but "in many cases, the factor that the [district] court should *primarily* consider is whether granting the motion would subject the opposing party to unavoidable prejudice." *Id.* (quotation simplified); *see also Fishbaugh v. Utah Power & Light*, 969 P.2d 403, 409 (Utah 1998) (stating that "whether the opposing side would be put to unavoidable prejudice" is "a primary consideration that a [court] must take into account in determining whether leave [to amend] should be granted" (quotation simplified)).

¶23 Cougar Canyon asserts that none of the three factors weigh in favor of granting Zions' requested amendment. It contends that Zions' motion was untimely, and filed less than two weeks before trial; that Zions has not proffered any compelling justification for its late filing; and that Cougar Canyon will suffer—and has suffered—prejudice as a result of Zions' amendment. We address each of the three factors—timeliness, justification, and prejudice—in turn.

¶24 First, with regard to timeliness, Cougar Canyon is correct in asserting that Zions' motion was filed after the deadline for amending pleadings had passed, and only eleven days before the date on which trial was scheduled to take place. But "[t]here

is . . . no 'bright line rule' against which to judge the timeliness of a motion to amend." *Beckman v. Cybertary Franchising LLC*, 2018 UT App 47, ¶ 31, 424 P.3d 1016 (quoting *Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, ¶ 28, 87 P.3d 734). While it is true that motions "filed in the advanced procedural stages of the litigation process, such as after the completion of discovery [or] on the eve of a scheduled trial date" are "typically deemed untimely," in many cases trials do not occur until "several years into the litigation." *Kelly*, 2004 UT App 44, ¶¶ 29–30. In this case, Zions' motion was filed only fifteen days after the deadline for amending pleadings, and that deadline—like the other deadlines in the case, including the trial date—had been set in an expedited fashion and placed on a compressed timeline to accommodate Zions' nonjudicial foreclosure action. Zions points out that its motion to amend was filed only six months after the filing of its original answer, only three months after Cougar Canyon served its initial disclosures, and before any meaningful discovery had taken place. While Cougar Canyon is technically correct that Zions' motion was untimely, under the circumstances of this case the district court did not abuse its discretion by viewing the timeliness factor as non-determinative, or at least as not weighing heavily in favor of denying the motion to amend.

¶25    Second, we assess Zions' justification for not raising the matter sooner. *See Evans*, 2018 UT App 37, ¶ 19 ("With regard to justification, the analytic thrust should be focused on the reasons offered by the moving party for not raising the issues earlier." (quotation simplified)). In evaluating the justification factor, "courts focus on the reasons offered by the moving party for failing to include the new facts or allegations in the original complaint," paying particular attention to the presence of "a dilatory motive, a bad faith effort, or unreasonable neglect." *Beckman*, 2018 UT App 47, ¶ 33 (quotation simplified). Here, the reason Zions provides for failing to include the required information in its original answer, or for not sooner seeking

leave to amend, is hardly compelling: in its brief on appeal, Zions proffers its perception that the relevant section of the Partition Statute is relatively obscure, and contends that "parties cannot reasonably be expected to be on the lookout for civil pleading standards in our legislative code." But Zions fails to mention that Cougar Canyon cited the Partition Statute in its complaint, and it does not strike us as an undue burden for a defendant, in preparing its answer, to consult the statute upon which the plaintiff's complaint is based. Although Zions' proffered reason is not compelling, it is likewise true that there is no indication that Zions was acting out of "bad faith" or with "a dilatory motive." *See id.* Under the circumstances, we do not consider the district court to have abused its discretion by viewing this factor as non-determinative, or at least as not weighing heavily in favor of denying the motion to amend.

¶26 Much more important to the district court's analysis was the third—and primary, *see Evans*, 2018 UT App 37, ¶ 20—factor: whether Cougar Canyon would be unavoidably prejudiced by allowing Zions to amend its answer. The court identified two potential areas in which allowing Zions' requested amendment might cause prejudice to Cougar Canyon: (a) that the trial date was imminent, and (b) that Cougar Canyon had incurred attorney fees and costs as a result of Zions' deficient original answer. The district court correctly understood that "a showing of simple prejudice is not enough to support a denial of a motion to amend." *Kelly*, 2004 UT App 44, ¶ 31. Instead, "a motion to amend should be denied only where the opposing side would be put to *unavoidable prejudice* by having an issue adjudicated for *which he had not time to prepare*." *Id.* (quotation simplified). And the court determined, in its discretion, that, on the facts of this case, "the timeliness and justification prongs are insufficient to support denial of th[e] motion" because any prejudice to Cougar Canyon could be entirely alleviated by continuing the trial date and awarding Cougar Canyon the attorney fees it incurred in relation to Zions' motion to amend. *See Evans*, 2018 UT App 37,

¶ 25 (noting that a "brief, tailored extension" to deadlines can sometimes alleviate prejudice from pleading amendments).

¶27 The district court also found, in connection with its decision, that any harm to Cougar Canyon was "mitigated in some part by the information contained in the notice of default which Cougar Canyon had actual notice of." Cougar Canyon did indeed have actual notice, through various sources, of all the information that Zions had left out of its original answer. The Partition Statute required Zions to set forth "the original amount and date" of its lien, as well as the "amounts remaining unpaid." *See* Utah Code Ann. § 78B-6-1207(2). But Cougar Canyon acknowledged that, before it filed its lawsuit, it had conducted a title search and not only knew about Zions' lien but knew the original amount and date of that lien. And it acknowledged that it had received a copy of Zions' notice of default, which set forth the amount that Zions believed was then owed on the Line of Credit. Thus, Cougar Canyon had actual notice, well in advance of Zions' motion to amend, of all the information that should have been included in Zions' original answer. Cougar Canyon's attorney even acknowledged that, as soon as Cougar Canyon saw Zions' answer, it "knew . . . [Zions] had messed up" and made a conscious decision to refrain from seeking additional discovery about the nature of Zions' lien in the hopes of later winning a judicial ruling that, pursuant to the Partition Statute, Zions had waived its rights under the Line of Credit. Under these circumstances, the district court was within its discretion to determine that Cougar Canyon would not be meaningfully or unavoidably prejudiced by allowing Zions to amend its answer, and to take measures—postponing the trial, allowing additional discovery, and ordering reimbursement of attorney fees— designed to eliminate the types of prejudice it could identify.

¶28 Cougar Canyon resists this conclusion, asserting that, if the court's decision to allow amendment is here affirmed, "then there can be no limit to a [district] court's discretion" to grant a

motion to amend. Cases in which a court's decision to grant (as opposed to deny) a motion to amend has been determined, on appeal, to be an abuse of discretion are rare, but Cougar Canyon directs our attention to two such cases. *See Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44 (2d Cir. 1983); *Rolan v. New West Health Services*, 2017 MT 270, 405 P.3d 65. We find these cases readily distinguishable from the case at hand, and we certainly do not view our affirmance here as an indication that district courts enjoy boundless discretion to grant motions to amend.

¶29   In *Evans v. Syracuse City School District*, the case had been pending for three years by the time the defendant sought leave to amend its answer, which motion was brought just six days before a multi-day trial was set to begin. 704 F.2d at 47. The defendant had known of the grounds for the amendment for "more than two years and nine months" prior to seeking leave to amend, but there was no indication that the plaintiff was aware of the issues related to the amendment prior to the filing of the motion to amend. *Id.* at 48. And in *Rolan*, the plaintiff proceeded with a class action lawsuit under state law, relying on sworn representations of the defendant that federal law was not at issue. 2017 MT 270, ¶¶ 4–5. The parties litigated for three years based on those representations, including a class certification motion and an interlocutory appeal of the class certification decision to the Montana Supreme Court. *Id.* After the first appeal, the defendant sought leave to amend its answer to assert that the original representations it had made under oath were not correct, and the state district court granted the motion. *Id.* ¶¶ 6–7. In a second appeal, the Montana Supreme Court determined that the district court had abused its discretion in allowing the amendment, determining that "undue prejudice" regarding the class certification phase of the litigation was "the dispositive issue," and that the defendant should not be allowed to amend in order to take back sworn statements that had sent the litigation down a three-year path. *Id.* ¶¶ 22–24.

¶30    In this case, by contrast, Cougar Canyon had not filed its lawsuit based on sworn representations by Zions, and the delay and untimeliness were minimal given the compressed schedule imposed by the district court. The case had only been pending for a matter of months, and Zions was only fifteen days late in filing its motion. Moreover, unlike the non-movants in *Rolan* and *Evans v. Syracuse City School District*, Cougar Canyon was fully aware of all the information relevant to the proposed amendment, and could not articulate any prejudice that was not fully alleviated by a continuance of the trial and an award of attorney fees. We find the district court's exercise of its discretion in this case to be proper, and our affirmance of that decision on the facts of this case is not a sign that district courts have unlimited discretion to grant motions to amend. Were this case not on a compressed schedule, or had Cougar Canyon not already known of the information at issue, or had the district court failed to take the steps it did (continuance and a fee award) to alleviate the limited prejudice that did exist, our conclusion may have been different.

¶31    But district courts have wide discretion in considering motions to amend pleadings. As our supreme court has noted, "[t]he question presented is not whether we would have granted leave to amend. It is whether we find an abuse of discretion in the district judge's decision." *See Stichting Mayflower Mountain Fonds v. United Park City Mines Co.*, 2017 UT 42, ¶ 49, 424 P.3d 72. Under the circumstances of this case, we discern no abuse of the court's wide discretion in its decision to grant Zions' motion for leave to amend its answer, and we therefore affirm that determination. And our decision in this regard means that Zions, by including the information required by the Partition Statute in its duly filed and authorized amended answer, satisfied the requirements of the Partition Statute, and its rights under the Line of Credit were therefore not waived.

III

¶32    Finally, Cougar Canyon asserts that the district court abused its discretion under rule 26 of the Utah Rules of Civil Procedure by failing to sanction Zions and prevent it from introducing any evidence about its lien, and by instead effectively extending the deadline by which Zions could file complete initial disclosures.

¶33    "If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document or material at any hearing or trial *unless the failure is harmless* . . . ." Utah R. Civ. P. 26(d)(4) (emphasis added). As noted, the district court determined that any harm to Cougar Canyon had been "mitigated in some part" because Cougar Canyon already had, from other sources, all of the information that the Partition Statute required Zions to set forth in its answer. And all remaining harm, including an inability to conduct discovery on the undisclosed information and "actual economic harm" in the form of attorney fees, was ameliorated by the continuance of the trial and the order compelling Zions to pay Cougar Canyon's attorney fees. In essence, the court determined that Zions' initial failure to disclose had been rendered harmless by circumstances, including the court's own remedial measures. And we have recently noted that district courts have the discretion, in the rule 26(d)(4) context, to impose remedial measures that render harmless a failure to disclose. *See, e.g.*, *Segota v. Young 180 Co.*, 2020 UT App 105, ¶ 22, 470 P.3d 479 (noting that, in appropriate cases, harm from a party's belated rule 26 initial disclosures can be "remedied . . . through an assessment of attorney fees and costs against [that party] imposed in connection with an extension of the deadlines"). Under the circumstances, the district court's determination—that Zions' failure to make timely initial disclosures was harmless—was within the bounds of its

discretion, and therefore the court did not abuse that discretion by declining to impose sanctions against Zions under rule 26.

CONCLUSION

¶34 The language of the Partition Statute does not necessarily require a defendant to set forth the statutorily required information in its original answer; the statute's mandates are satisfied if the information is set forth in an amended answer that is properly filed pursuant to rule 15 of the Utah Rules of Civil Procedure. In this case, the district court allowed Zions to file an amended answer, and that decision was not an abuse of the court's substantial discretion in such matters. Accordingly, Zions satisfied the requirements of the Partition Statute, and did not waive its rights under the Line of Credit by failing to include the necessary information in its original answer. And for similar reasons, the district court did not abuse its discretion under rule 26(d)(4) by determining that the initial failure to disclose was harmless, and accordingly declining to exclude Zions' evidence regarding its interest in the Property.

¶35 Affirmed.

———————